**In re Robert E. BEESLEY and Gail L. Beesley, Debtors.**

**Robert E. BEESLEY and Gail L. Beesley, Movants,**

v.

**Karen M. BURKE, Esq., Respondent.**

**Bankruptcy No. 96–10686.**

United States Bankruptcy Court, D. Maine.

Aug. 15, 1997.

---

Joseph M. O'Donnell, Goodspeed & O'Donnell, Augusta, ME, for Debtors.

Richard J. O'Brien, Linnell, Choate & Webber, Auburn, ME, for Respondent.

Gerrard F. Kelley, Portland, ME, U.S. Trustee.

P.J. Perrino, Jr., Augusta, ME, Chapter 7 Trustee.

### MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Chief Judge.

Before me is Robert and Gail Beesley's motion seeking an order compelling Karen M. Burke, Esq., their former Chapter 7 counsel, to disgorge fees. For the reasons set forth below, I will grant the motion. In addition, because Attorney Burke's conduct raises substantial questions regarding her fitness to practice in this court and regarding her billing practices for Chapter 7 debtors, I will order her to appear before me to show cause why additional sanctions should not be imposed.[1]

### Facts

#### 1. Case History

The Beesleys, contemplating bankruptcy, met with Attorney Burke in May 1996. On May 8 they paid her $750.00 to represent them in a Chapter 7 filing. On June 5 they paid her the $175.00 filing fee. On June 6 Attorney Burke filed their voluntary Chapter 7 petition.

---

1. This memorandum sets forth my findings of fact and conclusions of law in accordance with Fed. R. Bankr.P. 7052 and Fed.R.Civ.P. 52.

With the debtors' petition, Attorney Burke filed the statement required by § 329(a)[2] and Rule 2016(b).[3] That statement is reproduced as Appendix A to this opinion. After unremarkable travel, the trustee filed a "no asset" report and the Beesleys received their discharge. The case was closed on November 25, 1996.

On May 27, 1997, the Beesleys, represented by new counsel, moved to reopen their case, alleging that Attorney Burke had charged them over $1,800.00 for services she had agreed to provide for $925.00,[4] that her fees were unreasonable, and that she had failed to file a supplemental Rule 2016(b) statement disclosing additional fees paid her before their bankruptcy case closed. The Beesleys sought return of some or all of the money they had paid Attorney Burke, plus costs and fees.

I concluded that the Beesleys' motion set forth facts that, if proved, would entitle them to relief and granted the motion to reopen on May 30, 1997. *See* § 350(b). Attorney Burke, with counsel of her own, responded and, on June 27, 1997, filed a supplemental Rule 2016(b) statement disclosing that, in addition to the $925.00 payment reported on her initial statement, the debtors had paid her $478.24 and that they still owed her $425.00.

**2.** Unless otherwise indicated, all citations to statutory sections are to the Bankruptcy Reform Act of 1978 ("Bankruptcy Code" or "Code"), as amended, 11 U.S.C. § 101 *et seq.*

Section 329(a) provides:
Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

**3.** Rule 2016(b) provides:

DISCLOSURE OF COMPENSATION PAID OR PROMISED TO ATTORNEY FOR DEBTOR. Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee with-

## 2. *Fee History*

Shortly after the Beesleys paid Attorney Burke's $750.00 fee for representing them in routine Chapter 7 matters, they received a bill, dated July 8, 1996, for $985.43 (fees and costs). It set forth a $60.43 "balance due." They promptly paid. They next received Attorney Burke's August 5, 1996, bill for work performed during July, an additional $157.95. Again they paid.

On September 6, 1996, the Beesleys were billed another $365.45. This time they were unable to pay. In response to their inquiries, Attorney Burke wrote them on September 20, agreeing to accept minimum monthly payments of $25.00 and to forgo interest on unpaid balances so long as they made minimum payments. On September 27, they paid $25.00. In October, November, and December, they were billed another $172.63, $45.25, and $83.14, respectively. Each month they paid $25.00. They paid $25.00 against their balance in January and $25.29 in February. Mrs. Beesley testified that she discussed Attorney Burke's mounting fees with her. Mrs. Beesley considered the bills she received to be at variance with her understanding of what Attorney Burke had agreed to charge. Mrs. Beesley paid as best she could because she "wasn't sure what could be done about it."

in 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

**4.** Both figures include the $175.00 filing fee. Although the parties agree that Attorney Burke's total bill exceeded $1,800.00, their totals differ by a few dollars and cents—from each other's and from the charges set forth in the exhibits. In view of my conclusions and the relief ordered today, there is no need to reconcile the differences.

## *Discussion*

### 1. *Truth*

 ˙Attorney Burke concedes that she failed to file supplemental fee disclosures as required by Rule 2016(b), and recognizes that sanctions might issue for that default. *In re Larsen,* 190 B.R. 713, 717 (Bankr. D.Me.1996) (denying compensation and ordering disgorgement for counsel's fee disclosure defaults). *See Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis),* 113 F.3d 1040, 1045 (9th Cir.1997) (attorney's disregard of provisions requiring fee disclosure warranted denial of all compensation, without inquiry into whether fees were reasonable or excessive) *Mapother & Mapother v. Cooper (In re Downs),* 103 F.3d 472, 478 (6th Cir. 1996) (noting that in cases involving failure to disclose fee arrangements for debtor's counsel, courts have "consistently denied all fees") (collecting cases). She contends, however, that, aside from overlooking the requirement that she supplement her Rule 2016(b) statement to disclose fees collected postpetition, she acted properly in charging for Chapter 7 on an hourly basis, billing against (and beyond) the $750.00 retainer the Beesleys provided.

I cannot accept Attorney Burke's position. Characterizing her fee arrangement for the Beesleys' Chapter 7 case as "hourly against retainer," rather than "flat fee," contradicts Attorney Burke's June 13, 1996, Rule 2016(b) statement. That statement provides that "[t]he compensation paid and to be paid" to counsel was $925.00 (including the filing fee). It describes "[t]he services rendered and to be rendered" as including all routine Chapter 7 work (prefiling counseling, document prep-

aration, § 341 meeting attendance, negotiation/communication with creditors, response to relief from stay motions, reaffirmation agreements). It states that "[a]ny *additional* services ... are the subject of a separate fee agreement and will be billed at ... $115.00 per hour." (Emphasis added).

Although Attorney Burke testified that it was "always" her practice to execute written fee agreements, calling for hourly billing, with her clients, she could produce no such agreement for the Beesleys.[5] Mrs. Beesley, whose testimony I credit, testified that her fee arrangement with Attorney Burke called for a flat fee for routine Chapter 7 representation. Moreover, as one who sees scores of Chapter 7 files each week, I know that a flat fee charge for routine Chapter 7 legal services is far and away the prevailing practice in this district.[6] I am convinced that the reason that the Beesleys' file did not contain a separate fee agreement is because their case required none of the "additional services" (referred to in the Rule 2016(b) statement's paragraph 4) that would be the subject of such an agreement.

Because Attorney Burke conceded that she provided the Beesleys *no* services beyond run-of-the-mill, I conclude that she, in effect, double-billed them. They were charged over $1,800.00 for a routine Chapter 7 case— something they were to have received for $925.00.

Were I to conclude, as Attorney Burke contends, that she and her clients agreed to an "hourly against retainer" fee arrangement, she would be left to explain why her Rule 2016(b) statement misrepresented that

---

5. Attorney Burke proffered a blank fee agreement at trial. She testified that it is her standard form, that she requires all clients, including bankruptcy clients, to execute one substantially similar to it, and that she believes that the Beesleys signed such an agreement. The form is, on its face, plainly inappropriate for Chapter 7 bankruptcy clients. It requires a $2,000.00 retainer before Attorney Burke will begin work on a file. It states that minimum billing increments are one quarter of an hour, *cf.* D. Me. LBR 2016–1(a)(3)(i) (requiring fee applications be itemized in .1 hour increments), and sets unreasonable expense reimbursement rates, *cf.* D. Me. LBR 2016–1(a)(5) and LBR App. A (Standard Maine Expense Level List). Defendant's Exhibit 1.

Such provisions, if required by a bankruptcy practitioner (and honestly disclosed), would immediately draw attention, criticism, and corrective action from trustees and the court.

6. There is scant evidence to support Attorney Burke's position. In a July 25, 1996, letter to her clients, Attorney Burke explained that she billed on an hourly basis, described the Beesley's $750.00 payment as a "retainer," and stated that she would "bill" for attending the § 341 meeting. Plaintiff's Exhibit 3. However, the letter is after-the-fact and self-serving. The same can be said as to the unsigned "Addendum to Fee Agreement" contained within Plaintiff's Exhibit 2.

arrangement to the trustee, to creditors, and to the court.[7] As it stands, her situation is little different. Having undertaken the Beesleys' representation for a flat fee, and having disclosed that arrangement to the court in plain English, she deliberately proceeded to bill the debtors on an altogether different basis.

## 2. Consequences

■ This is an egregious case. Attorney Burke abused her clients badly. They retained her on the understanding that for a reasonable fee she would help them contend with their family's financial distress. Instead, no sooner had the press of overwhelming prepetition debt been lifted than they faced a new, overreaching creditor—their very own attorney—against whom they were unevenly matched.

Attorney Burke misled the court. Although her Rule 2016(b) statement may have accurately described the fee arrangement as the Beesleys understood it, she disregarded it completely, commencing to bill by the hour even before it was filed.

What troubles me as much as Attorney Burke's oppression of her clients is the stance she has taken in response to their motion. To say I found her testimony less than forthright and her approach to discovery crabbed, if not dishonest, would be understatement.

Worse still, I am left to wonder whether Attorney Burke has taken a similar approach with other bankruptcy clients and whether she has wrung post-filing fees from debtors in circumstances similar to this case, where the fee disclosures filed with this court rule out hourly fees for routine Chapter 7 (or, perhaps, Chapter 13) work.[8]

For the Beesleys, my power to review debtor/attorney agreements under § 329 and to regulate the conduct of attorneys who practice before me enables me to order that she disgorge *all* fees received by her from the Beesleys. *In re Lewis,* 113 F.3d at 1045–46 (bankruptcy courts have broad inherent authority to deny compensation to those who fail to meet statutory and procedural requirements designed to "protect the debtor from the debtor's attorney"); *In re Downs,* 103 F.3d at 477 (bankruptcy courts, like Article III courts, have inherent authority to sanction parties and counsel for improper conduct); *In re Larsen,* 190 B.R. at 717–18. I will do so.[9] *See also In re Saturley,* 131 B.R. 509, 517 (Bankr.D.Me.1991) (emphasizing the essential importance of candid disclosure). As a further sanction, I will order her to pay the Beesleys the fees and costs they incurred in reopening their case and prosecuting the disgorgement motion—$1,776.04.[10]

---

7. Attorney Burke testified that she viewed her Rule 2016(b) statement as fully consistent with an "hourly against retainer" billing arrangement. Any reasonable reading of the statement plainly belies that contention. Indeed, I interrupted Attorney Burke's testimony to express my incredulity at her testimony. With the benefit of several days' reflection, and upon review of the cooler (but hardly cold) record, my disbelief endures.

8. Another detail gives me pause. Defending against their motion, Attorney Burke attempted to paint the Beesleys as bad people, pointing to credit card cash advances they supposedly took on the eve of bankruptcy. Whatever may be said about the Beesleys' behavior, it does not excuse Attorney Burke's. What's more, the very conduct about which she testified leads to another problem—a potentially serious inaccuracy in her fee disclosure's seventh paragraph which states:

 The source of payments made by the Debtor to counsel was from the earnings, wages and compensation for services performed by the Debtor and the following additional sources— None.

Plaintiff's Ex. 2. The evidence suggests that, contrary to that representation, Attorney Burke knew that the Beesleys paid all or part of her fee from credit card cash advances.

9. I reject Attorney Burke's contention that, having obtained the benefit of a Chapter 7 discharge, the Beesleys should not receive the "windfall" of obtaining a refund of the $750.00 prepetition fee they paid her. The fresh start they hoped to achieve was not as fresh as it should have been, given Attorney Burke's unfair fee demands and the necessity of returning to bankruptcy court to seek disgorgement.

10. The Beesleys' counsel has submitted a verified bill of fees and costs in the total amount of $1,776.04. It is reasonable in all respects. Although the amount is not small and the issues litigated were discrete, the itemization demonstrates that counsel was forced to expend considerable time and effort in obtaining the Beesleys' file from Attorney Burke, indulging Attorney Burke's request for delay, and ensuring her presence at trial. I reject Attorney Burke's conten-

For other debtors who have experienced or who may experience treatment similar to the Beesleys and for the integrity of the bankruptcy process in this district, pursuant to § 105(a) and Fed. R. Bankr.P. 9029, I will order Attorney Burke to appear before me to show cause why additional sanctions, including suspension from practice in this court and enjoining collection of postpetition fees from clients similarly situated to the Beesleys, should not be ordered.

A separate order consistent with this opinion shall issue forthwith.

### APPENDIX A

Statement Pursuant to Rule 2016(b)

NOW COMES THE ATTORNEY FOR THE DEBTOR Karen M. Burke, pursuant to Bankruptcy Rule 2016(b), and states as follows:

1. The undersigned is the Attorney for the Debtor in this action.

2. The compensation paid and agreed to be paid by the Debtor to counsel is as follows:

 (a) For legal services rendered and to be rendered in contemplation of and in connection with this case: $925.00

 (b) Prior to filing this statement, the Debtor has paid to counsel: $925.00.

 (c) The unpaid balance due and payable to counsel as of the filing date is: $0.00.

3. The filing fee in the amount of One Hundred Seventy–Five Dollars ($175) has been paid from the funds advanced to counsel.

4. The services rendered or to be rendered by counsel to the Debtor include the following:

 (a) Analysis of the financial situation and rendering advance [sic] and assistance to the Debtor in determining whether to file a petition under the United States Bankruptcy Code;

 (b) Advice and assistance in determining which chapter of the Code would be best suited to the Debtor's needs;

 (c) Preparation, review and filing of the petition, schedules, statements of affairs and other documents required by the Court and anticipated to be required by the trustee;

 (d) Representation of the Debtor at the meeting of creditors and the provision of all additional information requested by the trustee at that meeting;

 (e) Negotiations with creditors to explain the bankruptcy process and to protect the Debtor's rights under the automatic stay;

 (f) Review and written response to any motions for relief from stay filed by creditors;

 (g) Negotiation, preparation, review and filing of any reaffirmation agreements required for the Debtor's successful rehabilitation.

Any additional services required by the Debtor are the subject of a separate fee agreement and will be billed at counsel's customary rate of $115.00 per hour. Those additional services may include, but are not limited to, the following: trial of any motion for relief from stay; complaints to determine dischargeability; complaints to deny discharge, negotiation or litigation with any tax authority; complaints/motions to determine nature, extent and priority of liens, stripdown actions; litigation to protect the Debtor against violations of the automatic stay; etc.

5. In the year prior to the filing of the present bankruptcy proceeding, the Debtor has engaged counsel or her firm for the following services for the fees set forth, all of which have been paid prior to the filing of the present petition: None

6. In addition to the present bankruptcy proceeding, counsel will continue to represent the Debtor in the following proceedings pursuant to the following fee arrangements: None

7. The source of payments made by the Debtor to counsel was from the earnings, wages and compensation for services performed by the Debtor and the following additional sources: None

---

tion that reopening the case and litigating the motion was "overkill" in light of her willingness to "be reasonable." Nothing about Attorney Burke's conduct in this proceeding supports that self-characterization.

8. The source of payments to be made by the Debtor to counsel for the unpaid balance, if any, will be from the Debtor's earnings, wages and compensation for services performed after the date of filing and from the following sources: None

9. All payments made or to be made to counsel will be in cash. Counsel has not received or bargained for any transfer, pledge or assignment of property or services in exchange for legal services rendered or to be rendered except for the following for the value stated: None

10. The undersigned has not shared or agreed to share with any other entity any compensation paid or to be paid except as follows: None

DATED: June 13, 1996

/s/ Karen M. Burke
Attorney for Debtor
P.O. Box 316, Lakeview Avenue
Winthrop, Maine 04364
(207) 377–6292

Plaintiff's Ex.2 (emphasis added).