In re Harrison HOBBS and Deborah
Hobbs, Debtors.

Peter C. FESSENDEN, Esq.,
Trustee, Plaintiff,

v.

David IRELAND, Jr., d/b/a Penobscot
Paralegal Services, Defendant.

Bankruptcy No. 96–10649.
Adversary No. 96–1058.

United States Bankruptcy Court,
D. Maine.

Sept. 19, 1997.

Peter C. Fessenden, Chapter 13 Trustee, Brunswick, ME, for plaintiff.

Gary J. Norton, Norton & Weeks, Bangor, ME, for defendant.

## MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

This adversary proceeding was brought by Peter C. Fessenden, Esq., Harrison and Deborah Hobbs's former chapter 13 trustee, against David Ireland, Jr., d/b/a Penobscot Paralegal Services, for violations of Bankruptcy Code § 110 in connection with Ireland's preparation of their Chapter 13 petition and related documents.[1]

Fessenden asks that Ireland be fined under §§ 110(b), (c), and (f); that I order Ireland to disgorge fees under § 110(h)(2); that I certify violations of § 110(i) to the district court (with a recommendation that damages

---

**1.** This memorandum sets forth my findings of fact and conclusions of law in accordance with Fed. R. Bankr.P. 7052 and Fed.R.Civ.P. 52. Unless otherwise indicated, all citations to statutory sections are to the Bankruptcy·Reform Act of 1978 ("Bankruptcy Code" or "Code"), as amended, 11 U.S.C. § 101 et seq.

This is a core matter over which this court has jurisdiction pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1), and (b)(2)(A).

be awarded); and that I enjoin Ireland from preparing Chapter 13 petitions and award fees and costs under § 110(j). Because I find that Ireland violated each of the subsections cited, I will grant substantially all of the relief requested and certify my finding that Ireland violated § 110(i) to the district court.

## FACTS

### 1. Chapter 1.

In early 1996, Harrison and Deborah Hobbs hired Ireland to collect accounts receivable for their struggling automobile repair business. He collected roughly $1,000.00, retaining approximately $250.00 as his fee. But the Hobbs's business was failing, and in the spring Mr. Hobbs traveled to Florida to find new work. By April, strained financial circumstances led the Hobbs to consider filing bankruptcy. They arranged to meet Ireland to discuss that eventuality.

In the course of an initial, one-hour meeting in their home, the Hobbs told Ireland they were moving to Florida, but that they needed debt relief and wanted to protect interests in their house, their cars, and in Mr. Hobbs's tools. Ireland told the Hobbs that he had "done hundreds of bankruptcy cases," and conveyed the impression that "he knew what he was doing" with a Chapter 13 filing.[2] He explained their options under Chapters 7 and 13, advising them that under Chapter 7 "they would give up everything and start with a clean slate," and that under Chapter 13 they could keep their things.[3]

The Hobbs hired Ireland because "he charged less than an attorney would."

The following Monday, Mrs. Hobbs went to Ireland's office and informed him that she and her husband had decided to file a Chapter 13 petition. She paid his $300.00 fee. There were no further consultations. Thereafter, Mrs. Hobbs saw Ireland only to drop off records, bills, account numbers, et cetera.

### 2. Chapter 13.

On June 19, 1996, the Hobbs met Ireland and signed their typed petition, without schedules and statements. Ireland gave Mrs. Hobbs three copies. She drove to the bankruptcy court clerk's office and filed for relief that day.

On June 25, 1996, the Hobbs met Ireland at state district court, where they were to attend a domestic relations hearing. At this time they signed their Chapter 13 plan, schedules and statements.[4] Consistent with their announced intentions, immediately after signing the documents and attending the state court hearing, they departed Maine for Florida.

Most of the documents that the Hobbs signed on June 25, 1996, together with Ireland's "Certification and Signature of Non-Attorney Bankruptcy Petition Preparer," signed on June 24, 1996, were filed on July 8, 1996.[5] Inexplicably, the Hobbs's schedules were filed separately on July 9, 1996.[6] Ireland has never filed a sworn disclosure of compensation for the Hobbs' case.[7]

Mr. and Mrs. Hobbs returned to Maine for their § 341 meeting on August 2, 1996.

---

2. Ireland testified that he said little more than that he had helped file "several" bankruptcy cases. I credit Mrs. Hobbs's version.

3. Ireland provided this advice, apparently based on his own "expertise." He did not discuss the advantages or disadvantages of filing a petition in Maine just before moving to Florida. He did not suggest that the debtors consult an attorney. Only much later, after the petition was filed, did Mr. and Mrs. Hobbs review and sign a "Notice to Individual Consumer Debtors," explaining differences among Chapters 7, 11, 12 and 13.

4. It was at this meeting that the Hobbs reviewed and signed the Notice to individual Consumer Debtors referred to *supra* note 3.

5. Ireland filed his certification on Official Form 19, a single-page document that simply stated: "I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared *this document* for compensation, and that I provided the debtor with a copy of this document." (emphasis supplied.)

6. Ireland testified that he did not recall what he did with the documents that Mr. and Mrs. Hobbs signed on June 25, 1996. Mrs. Hobbs testified that Ireland gave her copies for her own records, but that Ireland said he would file them.

7. Ireland's fee is disclosed in the debtors' response to question 9 on their Statement of Financial Affairs ("Payments related to debt counseling or bankruptcy").

There, in consultation with Fessenden, they determined that their plan, which called for monthly payments of $1,464.84, was not feasible.[8]

Mrs. Hobbs returned to Ireland's office on August 5, 1996, and told him the plan needed reworking. She spent ten to fifteen minutes there. Ireland agreed to draft a new plan and said he would call Mrs. Hobbs when he was done. When she did not hear back from Ireland within the next few days, she called him to inform him she would be returning to Florida. Ireland told Mrs. Hobbs he would revise the plan and send it to her in Florida.

Mr. and Mrs. Hobbs eventually received the amended plan, signed it, and returned it to Ireland in the envelope he provided. Although Fessenden, as trustee, received a copy of it, the amended plan was never filed with the court.

On August 26, 1996, Fessenden filed "Trustee's Omnibus Motion Pursuant to 11 U.S.C. § 110." That motion was superseded by this adversary action, filed September 23, 1996.[9]

On February 13, 1997, pursuant to Fessenden's motion, I dismissed the Hobbs's Chapter 13 bankruptcy for failure to make payments required under their proposed plan.[10]

Mr. and Mrs. Hobbs, now residing in Florida, have consulted bankruptcy counsel there and anticipate filing a Chapter 7 petition there shortly.

### DISCUSSION

**1. *Genesis of Section 110.***

■ Section 110 was enacted in 1994 "to protect consumers from abuses by non-lawyer petition preparers." *Consumer Seven Corp. v. United States Trustee (In re Fraga),* 210 B.R. 812, 818–19 (B.A.P. 9th Cir1997). Although criticized by some non-lawyers as "a thinly-veiled attempt to protect the professional domain of lawyers and to exclude non-lawyers from making a living in the bankruptcy arena," § 110 is "primarily … a consumer protection measure unrelated to the practice of law." *United States Trustee v. PLA People's Law–Arizona, Inc. (In re Green),* 197 B.R. 878, 879 (Bankr.D.Ariz. 1996); *see also Marshall v. Bourque (In re Hartman),* 208 B.R. 768, 776 (Bankr.D.Mass. 1997) (recognizing § 110 as "a consumer protection measure to deter and provide remedies for perceived abuses and the unauthorized practice of law by an increasingly large number of non–lawyers who were advising and assisting debtors in filing bankruptcy petitions."); *In re Rausch,* 197 B.R. 109, 116 (Bankr.D.Nev.1996) (citing legislative history of § 110(c)); *Ross v. Smith (In re Gavin),* 181 B.R. 814, 820–21 (Bankr.E.D.Pa.1995) (reviewing tools available to bankruptcy courts in monitoring assistance provided debtors by non-lawyers prior to enactment of § 110, concluding § 110 was enacted to provide supplemental remedies).[11]

Under the Code, bankruptcy courts act to protect debtors from negligence or abuse by all who assist them, lawyers as well as non-lawyers. *See, e.g.,* 11 U.S.C. § 329 (requiring attorney to file a statement of compensation for court review); Fed. R. Bankr.P. 2016(b) (requiring disclosure to trustee of § 329 compensation statement); *In re Beesley,* 212 B.R. 4 (Bankr.D.Me.1997) (ordering

---

8. After moving to Florida, the Hobbs monthly income (before expenses) was only $1,619.00.

9. Fessenden filed an adversary complaint when he determined that some of the relief he sought required initiation of a "civil action." *See, e.g.,* § 110(j).

10. The dismissal order expressly reserved jurisdiction over this adversary proceeding.

11. As indicated in the course of § 110's congressional consideration:

Bankruptcy petition preparers not employed or supervised by any attorney have proliferated across the county. While it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt to provide legal advice and legal services to debtors. These preparers often lack the necessary legal training and ethics regulation to provide such services in an adequate and appropriate manner. These services may take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system.

140 Cong. Rec. H10752, H10770 (1994) (section-by-section description inserted into the record during debates on the Bankruptcy Reform Act of 1994).

attorney to disgorge fees and pay debtors's fees and costs pursuant to § 329 and Rule 1016(b)); *In re Larsen,* 190 B.R. 713, 718 (Bankr.D.Me.1996) (denying lawyer's compensation and ordering fee disgorgement because of noncompliance with § 329 and Rule 1016(b)).

Section 110 addresses a very real concern. Although lawyers are subject to competency requirements and character assessments before they may practice law, petition preparers are presently subject to no regulation or licensing procedures. In addition, attorneys can be disbarred, suspended or otherwise sanctioned if they fail to obey the ethical rules promulgated by the Maine Supreme Judicial Court and adopted by the U.S. District Court of Maine.[12] When a lawyer's conduct breaches the professional standard of care and damage results, the common law provides relief. *See generally In re Rausch,* 197 B.R. at 119 (finding § 110's distinction between attorneys and petition preparers rational because attorneys are subject to malpractice actions, rules of ethics, disciplinary proceedings, continuing legal education requirements, and are responsible for the conduct of their employees).[13] In the bankruptcy context, § 110 fills the breach by providing statutorily-defined regulation of non-attorneys whose work significantly affects debtors and the business of this court. *E.g., In re Gavin,* 181 B.R. at 820–21.

### 2. *Section 110's Application.*
#### a. **Section 110(a)**

Section 110 applies only to "bankruptcy petition preparers." Section 110(a)(1) defines a bankruptcy petition preparer as "a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing" in a bankruptcy case. § 110(a)(1); *see e.g., In re Fish,* 210 B.R. 603, 606 (Bankr.D.Colo.1997) (finding respondent was subject to § 110 as he accepted $190.00 for preparing debtors' peti-

tion); *United States Trustee v. Womack (In re Paskel),* 201 B.R. 511, 515–16 (Bankr. E.D.Ark.1996) (noting that even if preparer took money for preparing petition only to benefit charity, section would apply); *cf. In re Herrera,* 194 B.R. 178, 190–91 (Bankr. N.D.Ill.1996) (holding § 110 not applicable without evidence that husband was paid for signing wife's name on motion).

■ Ireland accepted $300.00 for preparing the Hobbs's petition, schedules, and related documents. He is a bankruptcy petition preparer within the meaning of § 110.

#### b. **Section 110(b)**

Section 110(b) states:

(b) (1) A bankruptcy petition preparer who prepares a document for filing shall sign the document and print on the document the preparer's name and address.

(2) A bankruptcy petition preparer who fails to comply with paragraph (1) may be fined not more than $500 for each such failure unless the failure is due to reasonable cause.

Fessenden asserts Ireland prepared five separate documents for filing on the Hobbs's behalf and that, under § 110(b), he was required to sign and print his name and address on each. In his view, the Hobbs's petition, their plan, their schedules, their statement of financial affairs, and their certification of creditor matrix is each a separate "document for filing" under § 110(b)(1). Ireland's name, address, and signature appear on none of those documents.

Ireland acknowledges his failure to sign the documents. However, he contends that his July 8, 1996, filing of Official Form 19: "Certification and Signature of Non–Attorney Bankruptcy Petition Preparer," satisfied § 110(b) for the "entire proceeding." Alternatively, he argues that he had "reasonable cause" for § 110(b)(1) noncompliance and

---

**12.** *See* U.S. District Court for the District of Maine Local Rule 83.3; D. Me. LBR 9029–3.

**13.** Even under circumstances where professional malpractice insurance *is absent or ineffective,* clients of Maine lawyers may obtain some measure of relief under the recently-established Lawyers' Fund for Client Protection. *See* Lawyers'

Fund for Client Protection Rule 1 (1997) (reimbursing clients for "losses caused by the dishonest conduct of lawyers admitted and licensed to practice law in the courts of this State occurring in the course of lawyer-client or fiduciary relationship between the lawyer and the claimant.").

should not be fined because before this case he had consistently filed only Form 19 in Chapter 7 cases in this district and because he had informally consulted with the local Chapter 7 trustee regarding that practice. I reject both contentions.

The statute defines "document for· filing" as "a petition or · any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under this title." § 110(a)(2). Although bankruptcy courts that have considered the matter are not in complete agreement, the clear majority has concluded that the petition and each of the various schedules and statements required of debtors are separate documents for purposes of § 110. *See In re Hartman,* 208 B.R. at 776—77 (petition, schedules, statement of affairs, statement of intention, and verification of creditor matrix); *In re Paskel,* 201 B.R. at 516 (petition, schedules, and statements of financial affairs); *In re Rausch,* 197 B.R. at 120, 120 n. 14 (schedules, statement of financial affairs, and statement of intention); *see also In re Jackson,* 205 B.R. 344, 345 (Bankr.S.D.Fla.1997) (response to motion for relief from stay and motions to avoid lien); *Bohman v. Independent Savings Plan Co. (In re Bohman),* 202 B.R. 179, 179 (Bankr.S.D.Fla.1996) (dischargeability complaint).[14]

One court disagrees. *In re Brokenbrough,* 197 B.R. 839 (Bankr.S.D.Ohio 1996), held that it would be "over-reaching" to hold that the schedules and statement of affairs were separate documents under § 110(b). *Id.* at 834–44. In *Brokenbrough* all the documents were filed together (attached to the petition) and were filestamped and docketed as one document. *Id.* The petition preparer had completed Form 19 and had attached it to the petition. *Id.* at 843. Finally, the court observed that not all of the documents before it contained their own signature lines. *Id.* at 844.

Another court has viewed the matter similarly, if not identically. In *In re Burdick,* 191 B.R. 529 (Bankr.N.D.N.Y.1996), the court remarked that "[t]echnically, the statute could be construed to require that the preparer's name, address, signature and social security number be included not only on the petition, but also the schedules and statement of financial affairs filed on behalf of each debtor." *Id.* at 536 n.5 (declining a potential aggregate fine of $22,500.00 for § 110 violation in three· cases). It held, however, that "in the situation where the schedules and statements are included with the petition at the time of filing, . . . for purposes of Code § 110 a single document has been filed." *Id.*

■ I hold that the petition, plan, schedules, statement of financial affairs, and certification of creditor matrix prepared by Ireland for Mr. and Mrs. Hobbs is each a separate "document for filing," requiring Ireland's· signature, name, and address.[15]

Requiring petition preparers to sign each separate form recognizes the reality that a debtor's petition, schedules, statement of affairs, and other required documents are not always filed together, or necessarily even filed. *See, e.g.,* 11 U.S.C. § 521(1) (documents to be filed by debtors unless otherwise ordered by the court); § 521(2)(A) (statement of intention to be filed within thirty days of petition or by § 341 meeting, whichever is earlier); Fed. R. Bankr.P. 1007(c) (schedules and statements may be filed up to

---

**14.** The Ninth Circuit Bankruptcy Appellate Panel is the only appellate court to have been presented with a § 110(b) issue. *In re Fraga,* 210 B.R. 812. The panel upheld the bankruptcy court's $1,000.00 fine, a sum that included a $500.00 fine for the preparer's failure to sign the petition in accordance with § 110(b)(1) and a $500.00 levy for failure to provide the preparer's identifying number as required by § 110(c)(1). *Id.* at 818.

**15.** As *In re Rausch* and *In re Hartman* recognized, when the Official Forms for the petition,

schedules, and statement of financial affairs were recently amended to add a petition preparer signature line, the Advisory Committee considered each to be a " 'document for filing' that may be prepared by a 'bankruptcy petition preparer.' " Official Bankruptcy Form 7 advisory committee's note to 1995 amendments. *See* Fed. R. Bankr.P. 9009 ("The Official Forms prescribed by the Judicial Conference of the United States shall be observed and used with alterations as may be appropriate."). Moreover, each of these Official Forms also contains a case caption, implicitly recognizing its functional severability.

fifteen days after the petition). In the case at bar the documents were filed on three separate days.[16]

█ Ireland's contention that filing Form 19 by itself on July 8, 1996, satisfied § 110(b)(1) is simply wrong. Form 19 is intended as an accompaniment for documents which do not have official forms bearing an incorporated prepared's certification and signature section

> [Form 19] or adaptations of [Form 19] have been incorporated into the official forms of the voluntary petition, the schedules, the statement of financial affairs, and other official forms that typically would be prepared for a debtor by a bankruptcy petition preparer. [Form 19] is to be used in connection with *any other document* that a bankruptcy petition preparer prepares for filing by a debtor in a bankruptcy case.

16. I suppose that a petition preparer *could* comply with the statute while shunning the safe harbor the forms provide, but I need not decide today whether to embrace *Burdick*'s holding. Assuming a preparer could satisfy § 110(b)(1) by ensuring that, at the same time as documents are filed, a single declaration listing specifically each document prepared is filed, Ireland came nowhere near such compliance here. His certification, referring only to Ireland's preparation of "this document" was filed well after the petition and apart from the schedules.

I do note that, because the debtor(s), and not the preparer, control the timing of the bankruptcy filing, *e.g.*, §§ 110(e)(1) and (g)(1), depending on the *Burdick* procedure to comply with § 110(b)(1) would be risky at best.

17. The absence of an official form with a petition preparer signature line for either the Chapter 13 plan or the certification of creditor matrix is consistent with my determination. All that has been said with regard to the other documents prepared by Ireland applies to the plan and creditor matrix certification. Each is, practically and functionally, a "separate document" in the bankruptcy case and should be considered so under § 110(a)(2). Indeed, as the passage quoted above makes clear, Form 19 was expressly designed to accompany such documents.

18. Chapter 7 trustee Gary Growe first contacted Ireland regarding Ireland's failure to observe § 110's requirements in December 1995. In his letter Growe informed Ireland of his failure to comply, urged Ireland to review § 110, and finished by stating that he "anticipate[d] full compliance in the future." (Def.Ex. D.) Attached to the letter was Official Form 19, which Growe

Official Bankruptcy Form 19 advisory committee note to 1995 amendments (emphasis added). In any event, Ireland's Form 19 (filed weeks after the petition was filed and a day before the schedules were filed) with only its general reference to "this document" was so vague as to render it meaningless.[17]

█ The fact that, in other cases, the Chapter 7 trustee has acquiesced in Ireland's use of Official Form 19, rather than the required, separate document certifications, makes *no difference*. Communications between that trustee and Ireland and that trustee's decision not to insist that Ireland comply fully with § 110(b) did not immunize Ireland from Fessenden's action or excuse his noncompliance in this case.[18] They bind neither Fessenden nor this court.[19]

Thus, Ireland committed five violations of § 110(b). The maximum fine for each is $500.00, but Fessenden asks that a fine of $150.00 per violation be imposed. Although I

testified he expected would be used by Ireland. Growe also testified he did not recall whether he told Ireland that Official Form 19 was all that was necessary. It was not reasonable for Ireland, who as a bankruptcy petition preparer holds himself out as a person familiar with the bankruptcy process, to rely on Growe's representations as a determination of § 110 compliance. Any helpful hints Growe may have offered Ireland were merely that. It was not legal advice, and it was certainly not a representation from the court.

Attached to Growe's December 1995 letter was the advisory committee note for Form 19. That note, quoted above, alerted Ireland to Form 19's limited function—to accompany documents for which forms including preparer signature lines have not been promulgated.

19. Ireland's view that his dealings with one Chapter 7 trustee provided him with an effective "seal of approval" is but one of many examples of how Ireland misperceives law and process. His fundamental claim is that he was unaware that the statute required more of him than he did.

"[I]gnorance of [§ 110], even if true, would not be reasonable cause to vitiate the imposition of fines." *In re Murray*, 194 B.R. 651, 658 (Bankr. D.Ariz.1996). A bankruptcy petition preparer can lawfully offer nothing to a debtor aside from typing service and, I suppose, a rudimentary familiarity with process and forms. It is a telling admission when one disclaims knowledge of the basic requirements imposed on him by the process of which he claims salable expertise.

accept none of the excuses Ireland proffers, in view of the cumulative fines that other violations will bring, I will set the fine at the level the plaintiff requests.

#### c. Section 110(c)

Section 110(c) provides:

(1) A bankruptcy petition preparer who prepares a document for filing shall place on the document, after the preparer's signature, an identifying number that identifies individuals who prepared the document.

(2) For purposes of this section, the identifying number of a bankruptcy petition preparer shall be the Social Security account number of each individual who prepared the document or assisted in its preparation.

(3) A bankruptcy petition preparer who fails to comply with paragraph (1) may be fined not more than $500 for each such failure unless the failure is due to reasonable cause.

Ireland failed to place his social security number on the documents he prepared for filing. He raises no challenge to the statute's application. I see no reason to distinguish between Ireland's failure to comply with § 110(b)(1) and § 110(c)(1). *See In re Rausch*, 197 B.R. at 120 (interpreting "document for filing" as having the same meaning in subsections (b) and (c)). Again, although I could fine Ireland $500.00 for each of five violations, I will set the fine at $150.00 per violation as Fessenden requests.

#### d. Section 110(d)

Section 110(d) provides:

(1) A bankruptcy petition preparer shall, not later than the time at which a document for filing is presented for the debtor's signature, furnish to the debtor a copy of the document.

(2) A bankruptcy petition preparer who fails to comply with paragraph (1) may be fined not more than $500 for each such failure unless the failure is due to reasonable cause.

■ Fessenden asks that I fine Ireland for violating § 110(d)(1) because Ireland "did not

deny that he failed to provide a copy of the petition to the debtors at the time the documents were presented to them for their signatures." Mrs. Hobbs testified that her June 19, 1996 meeting with Ireland, he gave her three copies of the petition, all three of which were to be filed with the court that day. *See* D. Me. LBR 1002–2(a)(1) (requiring debtors to file an original and three copies of "any petition ... schedules and statements"). At their subsequent meeting on June 25, 1996, Ireland did provide the Hobbs with their own copies of the schedules and statements.

Because the petition, statements, and schedules are separate documents, I agree that Ireland violated § 110(d)(1), but I will not impose fines for the violations. The complaint does not allege a § 110(d) violation, it is not clear that the issue was tried by consent, and, in any event, the plaintiff has not moved to amend the pleadings to conform with the evidence. *See* Fed. R. Bankr.P. 7015(b) (providing for amendment of pleadings to conform to the evidence when issues not pleaded are tried, but stating that failure to so amend does not affect the trial result)

#### e. Section 110(f)

Section 110(f) provides:

(1) A bankruptcy petition preparer shall not use the word "legal" or any similar term in any advertisements, or advertise under any category that includes the word "legal" or any similar term.

(2) A bankruptcy petition preparer shall be fined not more than $500 for each violation of paragraph (1).

Ireland testified that he had done business and advertised under the name "Penobscot Paralegal Services" since "day 1." He advertises under that name in local newspapers and in the telephone directory's yellow pages. His yellow pages advertisement appears under the heading "Legal Document Preparation Svce."

■ I have no trouble concluding that by advertising in the yellow pages under "Legal Document Preparation Svce" Ireland has violated § 110(f)(1)'s prohibition against adver-

tising "under any category that includes the word 'legal.'" *Walton v. Levinson (In re Schweitzer),* 196 B.R. 620, 624 (Bankr. M.D.Fla.1996) (petition preparer fined for advertising in local newspaper under category "Legal Services"); *see also In re Chamberland,* 190 B.R. 972, 975, 977 (Bankr. M.D.Fla.1996) (petition preparer advertised under section in paper for legal services). I will fine Ireland $500.00 (more than the $200.00 fine Fessenden seeks) for his unlawful yellow pages listing. This is a particularly flagrant violation; Ireland made no attempt to ascertain or obey the law.

■ Ireland's use of the term "paralegal" in each of his advertisements constitutes a separate violation the § 110(f)(1) prohibition against "including the word 'legal' or 'any similar term' in any advertisement." *Burdick,* 191 B.R. at 535 (quoting § 110(f)(1)). I conclude this is so because, in view of § 110's purpose, "paralegal" and "legal" are "similar terms" under subsection (f).

■ Section 110 is a consumer protection measure. Although there is *no* legislative history specific to subsection (f), it is clear that in enacting § 110 Congress was concerned with debtors who may be "ignorant of their rights both inside and outside the bankruptcy system." 140 Cong. Rec. H10752, H10770 (1994) (section-by-section description inserted into the record of house debates on the Bankruptcy Reform Act of 1994). Thus, § 110(f) is appropriately viewed as a measure meant to ensure that debtors understand exactly what they will and will not receive from bankruptcy petition preparers. Petition preparer advertising must keep well clear of any suggestion that the preparer will be offering legal services or insights.

The prefix "para" is defined as "beside," "closely resembling the true form," and "associated in a subsidiary or accessory capacity." Webster's Third New International Dictionary 1634 (1976). The definition of

"Paralegal" includes "of, relating to, or being a paraprofessional who assists a lawyer." *Id.* at 76a. *See also* Black's Law Dictionary 1111 (6th ed. 1990) ("A person with legal skills, but who is not an attorney, and who works under the supervision of a lawyer in performing various tasks relating to the practice of law or who is otherwise authorized by law to use those legal skills."). Ireland works independently, unaffiliated with and unsupervised by any member of the bar. Advertising himself and his business as providing "paralegal services" implies such an association or, at least, promotes Ireland's "legal skills" when, in reality, he can lawfully provide none. *See* Me.Rev.Stat. Ann. Tit. 4, § 807(1) (West Supp.1996) (unless admitted to the bar "[n]o person may practice law or profess to practice law within the State or before its courts, or demand or receive remuneration for those service rendered in this State"). Thus, because the term "paralegal" fosters consumer confusion of the character Congress intended to eliminate, it is properly considered a "similar term" to "legal" under § 110(f)(1). Because Ireland advertised using the term, and, again, because this is a serious (and repeated) violation, I will impose a second $500.00 fine under § 110(f)(2).[20]

**f. Section 110(h)**

Section 110(h) states:

(1) Within 10 days after the date of the filing of a petition, a bankruptcy petition preparer shall file a declaration under penalty of perjury disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor.

(2) The court shall disallow and order the immediate turnover to the bankruptcy trustee of any fee referred to in paragraph (1) found to be in excess of the value of services rendered for the documents prepared. An individual debtor may exempt

---

20. It is an open question whether Ireland is subject to a fine of up to $500 for each edition of each newspaper containing the offending language. *See United States Trustee v. Tank (In re Stacy),* 193 B.R. 31, 36 (Bankr.D.Or.1996) (fining petition *preparer* $5,000.00 for advertising under name "Legal Alternatives" once a week for 62 weeks). However, it is a question I decline to answer today, as a fine for two violations of § 110(f)(2) (one for the yellow pages ad and one for newspaper advertising), coupled with injunctive relief, discussed *infra,* should suffice to convince Ireland to conform his practices to the law.

any funds so recovered under section 522(b).

(3) The debtor, the trustee, a creditor, or the United States trustee may file a motion for an order under paragraph (2).

(4) A bankruptcy petition preparer shall be fined not more than $500 for each failure to comply with a court order to turn over funds within 30 days of service of such order.

■ Although the debtors' Statement of Financial Affairs disclosed the fee paid to Ireland, Ireland ignored *his* separate, statutory obligation to file a sworn disclosure of fees paid to him by or on behalf of the debtors in the twelve months preceding bankruptcy. Time and again, this court has emphasized in commenting on attorneys' disclosure requirements that full and candid disclosure is "essential." *In re Saturley*, 131 B.R. 509, 516 (Bankr.D.Me.1991).[21] Courts passing on the issue have strictly enforced § 110(a)(1)'s fee disclosure mandate for non-attorney petition preparers. *See In re Fraga*, 210 B.R. at 818 (full disgorgement proper where payments to petition preparer listed on debtor's statement of financial affairs but no separate disclosure filed; full $500 fine would also have been appropriate had bankruptcy court imposed it); *In re Fish*, 210 B.R. at 607 (following show cause hearing and determination that preparer failed to file § 110(h) declaration, preparer given 30 days from date of order to so file or face full disgorgement *and* fine).

My inclination to require Ireland to disgorge all undisclosed fees is strengthened when I consider what he actually did "for" (more accurately "to") the debtors here. The documents he prepared were slipshod and sloppy. The forms he furnished were out of date. The debtors' schedules and statements omitted significant information, such as exemption claims for the assets (*i.e.*, home, car, tools) they had filed for Chapter 13 to protect. To make matters worse, the schedules and statements were not filed within fifteen days of the petition. *See* Fed. R. Bankr.P. 1007(c). The debtors obtained no extension of time within which to file them and no leave to file them late. Thus, the very efficacy of those filings is open to question. *See Petit v. Fessenden (In re Petit)*, 80 F.3d 29, 32 (1st Cir.1996) (finding that debtor could not proceed with arguments on appeal because debtor had not "met the first indispensable precondition to a valid claim of exemptions: a *timely* claim of exemptions") (emphasis original).

I will, therefore, order that Ireland disgorge not only the $300.00 that he charged in connection with bankruptcy forms preparation, but also the $250.00 in pre-bankruptcy compensation that § 110(b)(1) required him to disclose.

Section 110(h)(2) states that if disgorgement is ordered, the funds are to be turned over to the "bankruptcy trustee," but that individual debtors may "exempt any funds so recovered under section 522(b)." § 110(h)(2). The Hobbs's Chapter 13 case was dismissed on February 13, 1997, but Mrs. Hobbs testified that she and her husband had retained bankruptcy counsel in Florida and intended to file a Chapter 7 petition there. Because I am uncertain whether that has been done, I will order Ireland to turn the $550.00 directly over to Mr. and Mrs. Hobbs, subject to the requirement that they disclose the receipt of funds to the trustee in any bankruptcy case that may be pending and that they hold the funds for thirty days after informing such trustee.[22]

---

21. Rule 2016(b)'s disclosure requirement for debtors' counsel is the statutory analogue to § 110(h)(1)'s requirement for non-attorney petition preparers. This court has enforced counsel's disclosure duties firmly and consistently. *See, e.g., In re Beesley*, 212 B.R. at 7 (ordering disgorgement of bankruptcy attorney fees and payment of attorney fees debtor incurred in pursuing disgorgement against attorney who double billed her clients in complete disregard of the Rule 2016(b) statement); *In re Larsen*, 190 B.R. at 717–18; (disallowing attorney's compensation for failure to file a Rule 2016(b) disclosure and

for other inadequacies concerning fee application); *In re Saturley* 131 B.R. at 516–17 (denying all compensation to debtor's attorney because of "disturbing deficiencies" in the Rule 2016(b) disclosure).

22. By his account, Ireland spent between eight and nine hours organizing the debtors' materials and completing the petition and schedules. Under these circumstances, where there has been a serious disclosure default and where Ireland's efforts actually harmed the debtors, I

### g. Section 110(i)

Section 110(i) provides:

(1) If a bankruptcy case or related proceeding is dismissed because of the failure to file bankruptcy papers, including papers specified in section 521(1) of this title, the negligence or intentional disregard of this title or the Federal Rules of Bankruptcy Procedure by a bankruptcy petition preparer, or if a bankruptcy petition preparer violates this section or commits any fraudulent, unfair, or deceptive act, the bankruptcy court shall certify that fact to the district court, and the district court, on motion of the debtor, the trustee, or a creditor and after a hearing, shall order the bankruptcy petition preparer to pay to the debtor—

(A) the debtor's actual damages;

(B) the greater of—

(i) $2,000; or

(ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and

(C) reasonable attorneys fees and costs in moving for damages under this subsection.

(2) If the trustee or creditor moves for damages on behalf of the debtor under this subsection, the bankruptcy petition preparer shall be ordered to pay the movant the additional amount of $1,000 plus reasonable attorneys' fees and costs incurred.

▉ Fessenden argues that in his dealings with Mr. and Mrs. Hobbs Ireland violated § 110 and engaged in "fraudulent, unfair, or deceptive" acts, and asks that I certify such findings to the district court so that it may award damages. Although § 110(i)'s full content is less than clear,[23] I have no

---

need not address the reasonableness of the time Ireland expended or his hourly rate. *See cf. Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045 (9th Cir.1997) (attorney's disregard of provisions requiring fee disclosure warranted denial of all compensation, without inquiry into whether fees were reasonable or excessive).

23. Because § 110 is relatively new, case law interpreting subsection (i) is sparse. That which exists generally focuses on egregious conduct plainly qualifying as "fraudulent, unfair, or deceptive." *See In re Fish*, 210 B.R. at 608 (finding "unfair, fraudulent and deceptive" preparer's use of: multiple aliases, a later closed mail-drop-box, multiple addresses with no forwarding provided, a later disconnected, non-forwarded phone number, a caller identification device to avoid contact with former clients, client filing fees for own purposes, fabricated excuses concerning nonpayment of filing fees, a cash only payment plan, and an "'equity skimming' scheme"); *In re Brokenbrough*, 197 B.R. at 845 (finding enough evidence of "fraudulent, unfair or deceptive conduct" in preparer's violation of other § 110 prohibitions); *In re Schweitzer*, 196 B.R. at 624 (finding to be "fraudulent, unfair or deceptive" preparer's payment of filing fee with an unrelated client's money and false representation to client that court date was set on cases yet to be filed); *In re Murray*, 194 B.R. 651, 659 (Bankr. D.Ariz 1996) (finding "unfair and deceptive" preparer's use of an inaccurate and misleading brochure "to lure individuals to his office"); *In re Burdick*, 191 B.R. at 537–38 (finding "unfair and deceptive" preparer's subornation of debtor perjury, manipulation of debtors to file false statement regarding preparer's provision of services,

and provision to debtors of false docket numbers for submission to creditors); *In re Cordero*, 185 B.R. 882, 886 (Bankr.M.D.Fla.1995) (finding "deceptive practices" in preparer's intentional circumvention of other § 110 requirements, including misrepresentation of fees on Statement of Financial Affairs, failure to sign and provide social security numbers on documents, collecting filing fees from clients, and omitting to file the requisite fee disclosure); *In re Gavin*, 181 B.R. at 824 ( finding fraudulent, unfair, and deceptive preparer's use of "'legal aid services'" name, hiring and holding out of unqualified staff as a "'paralegal assistant,'" and use of non-attorneys who appear to debtors to be attorneys and who provided slow and inadequate services); *cf. In re Paskel;*, 201 B.R. at 519–20 (finding "unfair and deceptive practices" violating § 110(j) in preparer's representation to debtor that he was an attorney, signing the schedules and petition without debtor's knowledge or consent, and preparation of petition and schedules without debtor's participation); *In re Stacy*, 193 B.R. at 37 (finding "fraudulent, unfair and deceptive conduct" violating § 110(j) as preparer mislead debtors by false assurances, made alterations in documents without consent, represented on second petition that debtor had not filed in the last six years when preparer had prepared a first petition for debtor within that time frame, and fabricated information on schedules). *But see In re Chamberland*, 190 B.R. at 978 (finding "no competent evidence" of fraud, negligence or overreaching in preparer's violations of §§ 110(b)(1), (c)(1) and (f)(1))). It is likely that, when considering conduct at the margins of the subsection's prohibitions, case law interpreting and applying the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), will be instructive. *See* 2

trouble concluding that Ireland's conduct fell well within the scope of its prohibitions.

To begin, without repeating the preceding discussions chapter and verse, Ireland violated § 110 in many ways, many times. Thus, he violated "this section" within the meaning of § 110(h)(1). See In re Gavin, 181 B.R. at 824 (noting that violations of several § 110 subsections are "more than sufficient to trigger the § 110(i) penalties").[24] Moreover, in holding himself out as a "paralegal" experienced .in dealing with Chapter 13 matters, Ireland blatantly misled the Hobbs. To the extent one may permissibly hold himself or herself out to the public as a "paralegal," some qualification by way of education or experience is necessary or else the representation is misleading. Ireland had not completed any formal paralegal training course and, having left such a program at a local business college, merely set up his "practice" and began "doing bankruptcies." He had no experience with Chapter 13 before this case.

In working with the Hobbs, Ireland also plainly engaged in the unauthorized practice of law. He explained to them the differences between Chapters 7 and 13 as related to their circumstances. It appears that.Ireland assisted the Hobbs in selecting exemptions.[25] He drafted the Hobbs's original and amended Chapter 13 plans, exercises that require relating operative Code provisions to the debtors' assets and financial circumstances. And while providing plans that had no realistic chances for successful completion, he advised Mr. and Mrs. Hobbs to stop making mortgage and car payments, thereby hastening defaults and their loss of assets.[26]

Moreover, Ireland's delays in preparing documents for filing (a circumstance that might not qualify as "fraudulent, unfair, or deceptive" absent his representations of expertise) resulted in the Hobbs's potential loss of exemption and other rights and in the necessity that they pay counsel to attend creditor-initiated proceedings in state court that they sought to avoid by their bankruptcy filing.[27]

I will, therefore, certify to the district court that Ireland engaged in "fraudulent, unfair, or deceptive" acts in dealing with Mr. and Mrs. Hobbs. Thus, the trustee may seek a damages award in the district court under §§ 110(i)(1) and(2).[28]

---

Lawrence P. King, ed., Collier on Bankruptcy ¶ 110.10[1] (15th ed rev. 1996 & Supp.).

24. The drafters of § 110 plainly appreciated and employed the terms "section" and "subsection" to mean § 110 and its alphabetically-denominated sub-parts. See § 110(a) (definitions applicable to "this section"); § 110(i)(2) (referring to fees and costs incurred in moving for damages under "this subsection.")

25. Ireland testified that he generally gives clients information about exemptions at the same time that he provides information about relief available under various chapters of the Code. In this case, the debtors received and signed the document explaining the differences among chapters on June 25, 1996, the same day they signed their schedules—which included their exemption claims. See discussions supra at note 3. Moreover, although Mrs. Hobbs testified that she had told Ireland of the need to "protect" certain assets, she "had no idea" about exemptions or as to why "that stuff was listed" as exempt.

26. The trustee does not seek damages based on the debtors' loss of their house in Maine because it was worth less than the encumbrances on it. He does seek damages on account of their loss of their van because, absent Ireland's advice to stop making payments, the Hobbs could have maintained them and kept the van, by plan payment

or reaffirmation whether or not they successfully completed a Chapter 13 plan.

27. Ireland was aware of the Hobbs's upcoming court date on a creditor collection action and of their desire to truncate those proceedings by filing a bankruptcy petition, but he prepared the petition too late to stay the creditor's attachment hearing.

28. I will not fix the damages here. See In re Fish, 210 B.R. at 608–09 (making itemized "recommendations for entry of damages" in certifying § 110(i) violations to district court); In re .Murray, 194 B.R. at 659; In re Burdick, 191 B.R. at 538 (certifying § 110(i) facts to the district court without fixing damages).

Section 110(i) directs me to certify to the district court only the fact of the preparer's violative conduct. Because § 110(i) requires the party seeking damages to move for them in the district court and because the district court may award damages only after a hearing, I expect that the damages will be the subject of the district court's fact finding. Nevertheless, to streamline the process and to avoid unnecessary remand, I find that Ireland's conduct damaged the Hobbs and recommend to the district court that the following damages be awarded: Mrs. Hobbs's airfare to return to Maine for trial—$206.00; long dis-

**(h) Section 110(j)**

Section 110(j) provides:

(1) A debtor for whom a bankruptcy petition preparer has prepared a document for filing, the trustee, a creditor, or the United States trustee in the district in which the bankruptcy petition preparer resides, has conducted business, or the United States trustee in any other district in which the debtor resides may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer.

(2)(A) In an action under paragraph (1), if the court finds that—

(i) a bankruptcy petition preparer has—

(I) engaged in conduct in violation of this section or of any provision of this title a violation of which subjects a person to criminal penalty;

(II) misrepresented the preparer's experience or education as a bankruptcy petition preparer; or

(III) engaged in any other fraudulent, unfair, or deceptive conduct; and

(ii) injunctive relief is appropriate to prevent the recurrence of such conduct, the court may enjoin the bankruptcy petition preparer from engaging in such conduct.

(B) If the court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I), (II), or (III) of clause (i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, or has not paid a penalty imposed under this section, the court may enjoin the person from acting as a bankruptcy petition preparer.

(3) The court shall award to a debtor, trustee, or creditor that brings a successful action under this subsection reasonable attorney's fees and costs of the action, to be paid by the bankruptcy petition preparer.

■■■ There is no need to repeat what has been said before. Ireland has been shown by a preponderance of evidence to have engaged in the unauthorized practice of law. *See In re Chamberland,* 190 B.R. at 978 (certifying § 110 record to state bar for investigation of unauthorized practice of law); *cf. United States Trustee v. Tank (In re Stacy),* 193 B.R. 31, 38–40 (Bankr.D.Or.1996) (finding on the evidence that preparer engaged in the unauthorized practice of law and, on that basis, issuing an injunction narrowly circumscribing permissible assistance to debtors). *See also In re Campanella,* 207 B.R. 435, 444–50 (Bankr.E.D.Pa.1997) (providing lengthy discussion concerning whether a preparer utilizing bankruptcy instructional kits was engaged in the unauthorized practice of law). Such conduct is criminal. *See* Me. Rev.Stat.Ann. tit. 4, § 807(2) (West Supp.1996) (providing that the unauthorized practice of law is a Class E crime); *see also Board of Overseers of the Bar v. MacKerron,* 581 A.2d 424, 425 (Me.1990) (discussing unauthorized practice by disbarred attorney). In addition, Ireland misrepresented his experience and engaged in unfair and deceptive conduct vis-a-vis Mr. and Mrs. Hobbs.

The trustee asks that I enjoin Ireland from preparing Chapter 13 petitions and related documents and that, until he ceases using the term "paralegal" in his business and the word "legal" in his advertising, he be enjoined from acting as a petition preparer in this district. Both requests will be granted. To refuse such relief would enable Ireland to continue with ongoing violations of § 110(f) by permitting him to carry on as a petition advertising under the "legal document preparation services" heading in the phone book's

---

tance telephone charges—$8.02; counsel fees for creditor's state court proceedings—$40.00; value of five months' use of debtors' van that was repossessed as a consequence of Ireland's advice to cease making payments—$1,645.00. To those sums I would add either the Chapter 13 filing fee ($175.00) and the Hobbs's airfare to the § 341 meeting in Maine ($475.00) or the retainer they have paid to Florida bankruptcy counsel ($700.00) and, if paid prior to the district court damages hearing, the Florida bankruptcy filing fee ($175.00). I also recommend that the district court award Fessenden $1,000.00 under § 110(i)(2) plus such reasonable costs and fees as he incurs in prosecuting a damages motion there.

yellow pages, and "practicing" in an area in which his incompetence is demonstrated.[29]

Having prevailed in the action for injunctive relief, Fessenden is entitled to his reasonable fees and costs. He seeks $4,162.50 in fees and $456.43 in costs. I find the request reasonable and will award it.[30]

## CONCLUSION

For the reasons set forth above, a separate order will issue:

(a) Fining Ireland a total of $750.00 for five violations of § 110(b)(1);

(b) Fining Ireland a total of $750.00 for five violations of § 110(c)(1);

(c) Fining Ireland a total of $1,000.00 for two violations of § 110(f);

(d) Ordering Ireland to disgorge $550.00 in undeclared compensation pursuant to § 110(h)(2) and § 105(a);

(e) Certifying violations of § 110(i)(1) to the district court, with a recommended damages award;

(f) Enjoining Ireland under § 110(j) from preparing Chapter 13 petitions and related documents in this district and enjoining him from operating as a bankruptcy petition preparer so long as he continues to advertise in violation of § 110(f)(1);

(g) Awarding Fessenden fees in the amount of $4162.50 and costs in the amount of $456.43 under § 110(j)(3).

---

**29.** In a separate, Chapter 7 case, *In re Read*, Ch. 7 Case No. 96–10929, the United State Trustee initiated a motion seeking relief against Ireland under § 110. That matter was resolved by consent decree, the content and force of which is unaltered by the order(s) I will enter in this case.

**30.** Ireland does not take exception to the reasonableness of Fessenden's fees and costs. In addition, I have reviewed his supporting affidavit, Trustee's Exhibit 13, and the appended itemization. It is complete, well-detailed, and clearly reasonable.