**In re Herbert and Nita FARNESS, Debtors.**

**Bankruptcy No. 99–01931.**

United States Bankruptcy Court, D. Idaho.

Jan. 7, 2000.

Jake W. Peterson, Boise, ID, for Debtors.

L.D. Wees, Boise, ID, pro se.

Gary L. McClendon, Boise, ID, Office of the United States Trustee.

John H. Krommenhoek, Boise, ID, Chapter 13 Trustee.

## MEMORANDUM OF DECISION AND ORDER

TERRY L. MYERS, Bankruptcy Judge.

### BACKGROUND

Herbert and Nita Farness ("Debtors") contracted with L.D. Wees ("Wees") to prepare their chapter 13 petition, schedules, statement of financial affairs, and proposed chapter 13 plan which were filed on July 29, 1999. Wees is a "bankruptcy petition preparer" as defined by § 110(a)(1).[1]

On August 27, 1999, the first meeting of creditors was held in the Debtors' case. Subsequently, on September 2, the United States Trustee ("UST") filed a motion to review the fees paid to Wees alleging that he had violated several provisions of § 110. Specifically, the UST contends that Wees provided incorrect information in the Debtors' statement of affairs, advertised using the term "legal," and engaged in the unauthorized practice of law. The UST's motion requests that, based on these violations, the Court should review the fees Wees charged for reasonableness or sanction him by denying them entirely.

On September 3, 1999, attorney Jake W. Peterson entered an appearance on the Debtors' behalf, and with his assistance, the Debtors proposed an amended chapter 13 plan, which was ultimately confirmed on October 21, 1999.

### DISCUSSION

In 1994, Congress enacted § 110 of the Bankruptcy Code which sets standards for bankruptcy petition preparers, and provides penalties for the failure to meet such standards. *In re Mitchell*, 97.1 I.B.C.R. 5, 6 (Bankr.D.Idaho 1997). The House Report explained the rationale for § 110:

Bankruptcy petition preparers not employed or supervised by any attorney have proliferated across the country.

---

1. Section 110(a)(1) defines a "bankruptcy petition preparer" as "a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing[.]"

While it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt to provide legal advice and legal services to debtors. These preparers often lack the necessary legal training and ethics regulation to provide such services in an adequate and appropriate manner. These services may take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system.

H.R.Rep. 103–384, 103rd Cong., 2nd Sess. at 40–41 (1994). *See also, United States Trustee v. Tank (In re Stacy)*, 193 B.R. 31, 35 (Bankr.D.Or.1996); *Fessenden v. Ireland (In re Hobbs)*, 213 B.R. 207, 215 (Bankr.D.Me.1997). Thus, the statute's main purpose is to protect consumers from abuses by non-lawyer petition preparers. *Consumer Seven Corp. v. United States Trustee (In re Fraga)*, 210 B.R. 812, 818–19 (9th Cir. BAP 1997).[2] The key to § 110 is that a petition preparer may provide typing services, but may not in the guise thereof advise debtors of their rights and options or otherwise engage in the practice of law. This Court in *Mitchell* recognized the distinction:

> Document preparers are not attorneys... The task to organize information and type it, is something that a trained legal secretary can do, no more and no less. A document preparer may not give legal advice... Consequently, a document preparer should be compensated in the same fashion, and in the same amount as a legal secretary.

97.1 I.B.C.R. at 6, quoting *In re Kassa*, 198 B.R. 790, 791 (Bankr.D.Ariz.1996).

By virtue of the express provisions of § 110, and case law construing and applying those provisions (including, in this District, *Mitchell*), petition preparers such as Wees are on notice of the limits of their authority, and the potential consequences should they transgress those limits.

### A. Incorrect information

■ The Debtors' response to question no. 9 on their statement of financial affairs indicated that Wees received $150.00 for his services. However, on the same day Wees filed his disclosure of compensation form which stated he had received $165.00 for his services. The UST alleges that the entry of this incorrect information on Debtors' statement of financial affairs amounts to a violation under § 110.

At hearing on September 27, 1999, Wees acknowledged the inconsistency, and explained that the $150.00 figure had been embedded into the form saved in his computer's memory[3] and that he had neglected to change the amount to accurately reflect the fee actually charged.

The Court has not discerned nor has the UST explained what portion of § 110 is implicated by this acknowledged, though minor error. The UST has not alleged that any prejudice or damage befell the Debtors or the estate by virtue of this error. The disclosure of compensation signed by Wees was accurate. The inconsistency on the statement of affairs was adequately explained at hearing, and nothing indicates that this was anything other than an honest mistake. Accordingly, the Court does not find that a violation of § 110 has occurred.

### B. Advertising using the word "legal"

■ Wees admittedly advertises his services in the local telephone directory's

---

**2.** The Court need not find an intentional, fraudulent abuse of the consumer debtor in order for § 110 to apply. The statute also covers petition preparers who negligently lead debtors into relying on the non-lawyer for legal assistance. *See, Patton v. Scholl*, 1999 WL 431095, at *6, citing 140 Cong.Rec. H10771 (statement of Rep. Synar.) Thus, the Court need not find that Wees intended to take unfair advantage of these or other debtors, or intended to ignore or violate the prohibitions of § 110; it is sufficient if his conduct simply runs afoul of those restrictions.

**3.** Wees testified that, for the most part, he only prepares documents for chapter 7 cases, and the $150.00 figure is what he charges for his services in such cases.

"yellow pages" using the word "legal." That word appears in the phrases "self-help legal alternatives" and "legal form preparation."[4]

Section 110(f)(1) provides:

A bankruptcy petition preparer shall not use the word "legal" or any similar term in any advertisements, or advertise under any category that includes the word "legal" or any similar term.

In its discussion of this provision the court in *Hobbs* states:

Section 110 is a consumer protection measure. Although there is no legislative history specific to subsection (f), it is clear that in enacting § 110 Congress was concerned with debtors who may be "ignorant of their rights both inside and outside the bankruptcy system." 140 Cong. Rec. H10752, H10770 (1994) .... *Thus, § 110(f) is appropriately viewed as a measure meant to ensure that debtors understand exactly what they will and will not receive from bankruptcy petition preparers. Petition preparer advertising must keep well clear of any suggestion that the preparer will be offering legal services or insights.*

213 B.R. at 215 (emphasis supplied).

Applying § 110(f)(1) to a petition preparer's advertisement, the Bankruptcy Court for the Southern District of California found:

[T]he tenor of Filippone's advertisement in the North County Times is that the bankruptcy services offered by USPS are not limited to simple clerical functions. The advertisement gives the distinct impression that USPS is able to provide all services, including legal services, associated with a debtor's bankruptcy. Specifically, the advertisement

states that USPS is the "only paralegal company in San Diego that is able to handle your bankruptcy." The advertisement also contains the phrase, "no lawyers involved save money." The use of the word "paralegal," coupled with the representation that USPS is "able to handle your bankruptcy" creates the impression that USPS personnel can provide legal advice, but at a lower cost than a lawyer.

*In re Kaitangian*, 218 B.R. 102, 107–08 (Bankr.S.D.Cal.1998). *See also, Hobbs*, 213 B.R. at 215 (term "paralegal" fosters consumer confusion); *In re Calzadilla*, 151 B.R. 622, 626 (Bankr.S.D.Fla.1993) (typing service may not advertise in a fashion which leads reasonable lay person to believe the typing service offers the public legal services, legal advice or legal assistance regarding bankruptcy services).

At hearing and in briefing, Wees argues that, in his advertisement, the word "legal" is sufficiently modified by the word "alternatives" so that § 110(f)(1) is not offended and that no reasonable person would be misled into thinking that Wees' business offered legal advice. The Court is not persuaded.

█ First, the clear and plain language of § 110(f)(1) prohibits any use of the word "legal" in any advertisement by a nonattorney petition preparer. The statute does not say that some uses of the word "legal" are acceptable through context, modifier, or otherwise. The prohibition is absolute and unambiguous. The advertisement here violates § 110(f)(1).

Second, the purpose of the statute, as well as its literal command, is here violated. As in the cases cited above, Wees' advertisement creates the misleading im-

---

4. Wees' advertisement in the 1998 phone book published by U.S. West Dex, Inc., is at page 146 of the yellow pages under the "Bankruptcy Services" section. The text of this advertisement states in pertinent part:
    SELF–HELP LEGAL ALTERNATIVES OF IDAHO
    ... We can help YOU to HELP YOURSELF

... We can provide all necessary forms; and professional typing for legal form preparation.
Attorneys also advertise in this section of the yellow pages. It was not shown, however, that Wees advertises under any category designated as or for "attorneys", "lawyers", or "legal services."

pression that his business offers more than mere typing services to its clients. The word "legal" is not defined away by the word "alternatives." Rather, the phrase "legal alternatives" implies that a debtor can hire Wees *in lieu of* an attorney to prepare a bankruptcy filing.

Wees' advertisement leaves the impression that he provides all "necessary" services, which by implication would include legal services, required for the filing of a bankruptcy petition. Another phrase in Wees' advertisement, that he can "provide all necessary forms", gives the impression that Wees has legal knowledge which can assist debtors because he knows which "legal forms" are required for the filing of a proper bankruptcy petition. This is exactly what § 110(f)(1) seeks to prohibit. *See Hobbs*, 213 B.R. at 215.

The Court appreciates that the advertisement here also states that Wees provides "professional typing services," which services are properly within the role of a petition preparer. *Mitchell*, 97.1 I.B.C.R. at 6. But this has the appearance of providing typing as an added, supplementary service to the primary service of advising a debtor how, and with what forms, to file.[5]

■ Wees attempts to make fine distinctions in reading this advertisement, but § 110(f)(1) requires the Court to focus on the practical impact of this type of advertising on the unsophisticated consumer. Fairly read in its entirety, the advertisement leads the consumer debtor to believe that his need for legal advice and services can be safely obtained through Wees' "alternative."

■■ The Court therefore finds that Wees has violated the provisions of § 110(f)(1). Section 110(f)(2) provides "[a] bankruptcy petition preparer shall be fined not more than $500 for each violation of paragraph (1)." Thus, pursuant to § 110(f)(2), a sanction is mandatory, though the Court has discretion in setting its amount, up to a maximum of $500 per violation. Though the Court is aware that Wees prepares a great number of petitions (over 700 to date according to his brief) and that the advertising might be viewed as supporting a sanction in regard to multiple cases, the Court elects, at this time, to levy a single $500 fine for the violation in this case. This sanction will be made payable to the Clerk of the Bankruptcy Court. *Accord Kaitangian*, 218 B.R. at 118.

Wees also argues that § 110(f)(1) strictly interpreted violates his rights under the First Amendment to the United States Constitution and amounts to an unlawful restraint on trade, though he has provided no legal analysis or support for those contentions. These types of constitutional arguments have been previously considered and dismissed. *See, Kaitangian*, 218 B.R. at 107 and cases cited therein. *See also, Madarang v. Bermudes*, 889 F.2d 251, 253 (9th Cir.1989) cert. denied, 498 U.S. 814, 111 S.Ct. 54, 112 L.Ed.2d 29 (1990) (right to pursue a calling is not a fundamental right for purposes of the Equal Protection Clause); *Jeter v. Office of the United States Trustee (In re Adams)*, 214 B.R. 212, 218 (9th Cir. BAP 1997) (right to pursue calling as petition preparer not a fundamental right).

The Court concludes that these contentions lack merit, and do not bar the Court's finding of a violation under § 110(f)(1).

### C. Unauthorized practice of law

■ The UST contends that Wees is engaged in the unauthorized practice of law, as reflected by his conduct herein. Thus, the UST asserts that § 110 is violated. *See,* § 110(i) & (j).[6]

---

5. Similarly, the passing nod to a debtor's pro se status ("We can help YOU to HELP YOURSELF") doesn't keep the advertisement from being misleading and improper under § 110(f)(1).

6. As discussed below, the UST did not seek sanctions for this conduct under § 110(i) nor

Section 110 does not specifically prohibit the unauthorized practice of law. But neither does it excuse what would otherwise be unauthorized practice. Section 110(k) provides:

> Nothing in this section shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law.

A leading treatise explains:

> Section 110(k) provides that the ability of nonlawyers to practice before bankruptcy courts in a given jurisdiction will be governed by the "[relevant state] law, including rules and laws that prohibit the unauthorized practice of law," as well as by Section 110 itself.

2 COLLIER ON BANKRUPTCY, ¶ 110.11[1], p. 110–18 (15TH ed.1999) (footnote omitted). And indeed bankruptcy courts have generally looked to state law for guidance. *See, e.g., Patton v. Scholl,* 1999 WL 431095 at *6 (E.D.Pa.1999); *Ostrovsky v. Monroe (In re Ellingson),* 230 B.R. 426, 433 (Bankr.D.Mont.1999); *Kaitangian,* 218 B.R. at 108; *Stacy,* 193 B.R. at 38.

The Idaho Supreme Court has defined the practice of law as:

> [T]he doing or performing services in a court of justice, in any matter depending [sic] therein, throughout its various stages, and in conformity with the adopted rules of procedure. But in a larger sense, it includes legal advice and counsel, and the preparation of instruments and contracts by which legal rights are secured, although such matter may or may not be depending [sic] in a court.

*Idaho State Bar v. Meservy,* 80 Idaho 504, 508, 335 P.2d 62, 65 (1959) (quoting *In re Matthews,* 57 Idaho 75, 83, 62 P.2d 578, 582 (1936)).

In *Meservy,* the Court held:

> The drafting of the documents ..., or the giving of advice and counsel with respect thereto, by one not a licensed attorney at law, would constitute an unlawful practice of law, whether or not a charge was made therefor, and even though the documents or advice are not actually employed in an action or proceeding pending in a court. § 3–104[.]

*Id.*[7]

The UST alleges that Wees engaged in the unauthorized practice of law by assisting the Debtors in making determinations concerning what should be set forth in the filing, specifically in determining and claiming exemptions and deciding how the plan would treat certain creditors. Wees denies these allegations.

At hearing Wees testified that he met with the Debtors twice and prepared their forms with their assistance. Wees contends that, at these meetings, he read the actual forms to the Debtors question by question, and recorded their responses in his computer.[8] This information would then, through use of software, be entered automatically into all appropriate places on the schedules. Wees also provided the Debtors with a list of available exemptions and their applicable Idaho Code sections based on publications in his possession. He further assisted the Debtors in completing this District's model chapter 13 plan.

---

to enjoin this conduct under § 110(j). It sought, rather, to force Wees to disgorge the fee he was paid.

**7.** *See also,* Idaho Code §§ 3–401, 3–420; Idaho Bar Commission Rule 800, 801.

**8.** Respondent uses the actual bankruptcy documents (not an interview sheet) and reads each question to the debtors and records their response. If debtors do not understand a question, respondent refers them to the relevant section or definitions provided in a self-help book entitled "Chapter 13 Bankruptcy—Repay Your Debts" or "How to File For Chapter 7 Bankruptcy" published by Nolo Press.

Respondent's [Wees'] Brief in Opposition of U.S. Trustee's Motion to Review Fees Paid to Petitioner Preparer, at p. 2.

The conduct of Wees is more extensive than merely converting a debtor's handwritten materials into typed form, which is what *Mitchell* validates. *See also, Calzadilla,* 151 B.R. at 625. Particularly, in his assistance to the Debtors in classifying secured and unsecured debt, identifying possible exemptions, and completing the chapter 13 plan, Wees goes well beyond what § 110 allows and what *Meservy* allows.[9]

*Ellingson* found that a petition preparer had engaged in the unauthorized practice of law when it assisted debtors in a similar fashion:

> The record is clear that Monroe advised Ellingson and Erwins of available exemptions, provided them with a comprehensive list of available exemptions, determined where property and debts were to be scheduled, summarized and reformulated information solicited from clients, and generated the completed bankruptcy forms for Ellingson and Erwin on her computer. These tasks require the exercise of legal judgment beyond the capacity and knowledge of lay persons such as Monroe. *In re Herren,* 138 B.R. 989, 994–95 (Bankr.Wyo.1992) (citing *In re Anderson,* 79 B.R. 482, 485 (Bankr.S.D.Cal.1987); *O'Connell v. David,* 35 B.R. 141, 143 (Bankr.E.D.Pa. 1983) aff'd. 740 F.2d 958 (3rd Cir.1984); *In re Bachmann,* 113 B.R. 769, 772–3 (Bankr.S.D.Fla.1990)). By soliciting information in Exhibit 8 and preparing Schedules and Statements on her computer, Monroe rendered legal advice and therefore engaged in the unauthorized practice of law. *In re Agyekum,* 225 B.R. at 700; *Herren,* 138 B.R. at 994; *In re Grimes,* 115 B.R. 639, 643 (Bankr. S.D.1990).

230 B.R. at 433–434. *See also, Samuels v. American Legal Clinic, Inc. (In re Samuels),* 176 B.R. 616, 619 (Bankr.M.D.Fla. 1994) ("[i]t is necessary for Ms. Longley to paraphrase and explain bankruptcy concepts in order to obtain requisite information from consumers and place it in the proper form for the software.") *Accord Glad v. Mork (In re Glad),* 98 B.R. 976, 978 (9th Cir. BAP 1989) (which, prior to the enactment of § 110, reviewed fees paid to a non-attorney under § 329, and recognized that soliciting information from a debtor, advising him what chapter to file under, and assisting in the preparation of bankruptcy schedules amounted to the practice of law); *In re Anderson,* 79 B.R. 482, 485 (Bankr.S.D.Cal.1987) (non-lawyer had performed legal services by interviewing and soliciting information from the debtor as well as preparing bankruptcy schedules, all without complying with § 329.)

And in *Kaitangian,* the court found that a petition preparer had engaged in the unauthorized practice of law by using his computer software to help him prepare a debtor's petition and schedules:

> The Court finds that Filippone II's contention that the Bankruptcy Speciality Software "does it all" is disingenuous. Plugging in solicited information from questionnaires and personal interviews to a pre-packaged bankruptcy software program constitutes the unauthorized practice of law. Moreover, advising of available exemptions from which to choose, or actually choosing an exemption for the debtor with no explanation, requires the exercise of legal judgment beyond the capacity and knowledge of lay persons. *In re Herren,* 138 B.R. 989, 995 (Bankr.D.Wyo.1992); *In re McCarthy,* 149 B.R. 162, 166 (Bankr. S.D.Cal.1992); *In re Webster,* 120 B.R.

**9.** *See also, Hastings v. United States Trustee (In re Agyekum),* 225 B.R. 695, 701–02 (9th Cir. BAP 1998) which recognized that any assistance a petition preparer gives a debtor in the filing of a bankruptcy petition and schedules, other than typing, almost inevitably brings the preparer in conflict with unauthorized practice of law restrictions. Examples of such prohibited "services" are specifically set forth in *Agyekum,* 225 B.R. at 701 (citing the Bankruptcy Petition Preparer Guidelines of the United States Bankruptcy

111, 113 (Bankr.E.D.Wis.1990). Accordingly, the Court finds that the Filippones engaged in the unauthorized practice of law with respect to selecting exemptions for the debtors in these proceedings.

218 B.R. at 110.

Wees similarly engaged in the unauthorized practice of law. He is not saved by his use of preprinted bankruptcy forms or bankruptcy software which automatically placed the information he solicited from the Debtors' into the appropriate schedule. Wees' approach requires debtors to rely on his judgment as to the forms required to successfully file and prosecute a bankruptcy case, his use of computer software to ensure that information is correctly disclosed, and his resources as to what exemptions were available and the legal authorities supporting those claims.[10] As stated in *Patton*:

> [t]he choice of appropriate exemptions based on raw data provided by debtors is an exercise in legal judgment, and advising debtors to accept particular exemptions is legal advice. Regardless of what means Patton employed to select exemptions for each debtor, whether consultation with a computer program, a textbook, or other prepared materials, Patton performed legal services for [debtors] when he chose their exemptions.

1999 WL 431095, at * 9.

Additionally and importantly, the completion of the model chapter 13 plan requires a significant amount of legal judgment as to the proper classification and treatment of creditors. *Accord Samuels*, 176 B.R. at 619–620. There is essentially no way the plan can be prepared without providing legal advice. And, there is no evidence that here the Debtors made all relevant decisions about plan treatment of creditors on their own.[11]

These services which Wees provided the Debtors clearly went beyond merely typing the Debtors' forms. Wees has performed tasks which necessitated the exercise of legal judgment. The Court finds that Wees has engaged in the unauthorized practice of law, whether analyzed under *Meservy* or the many reported § 110 decisions.

■■■ The classic approach to a petition preparer's alleged unauthorized practice of law is to seek damages or an injunction. Section 110(i)(1) provides that:

> [I]f a bankruptcy petition preparer violates this section or commits any fraudulent, unfair, or deceptive act, the bankruptcy court shall certify that fact to the district court, and the district court on motion of the debtor, the trustee, or a creditor and after hearing, shall order the bankruptcy petition preparer to pay to the debtor—
>
> (A) the debtor's actual damages;
>
> (B) the greater of—

Court for the Northern District of California.)

**10.** Wees used a Nolo Press publication entitled *Chapter 13 Bankruptcy* (4th ed.1999) as a source for a listing of available Idaho exemptions. Two problems are presented. First, while a pro se debtor might elect to buy such guides, petition preparers may not insulate their unauthorized practice by pointing debtors to such materials. *Samuels*, 176 B.R. at 623, citing *In re McCarthy*, 149 B.R. 162, 167 (Bankr.S.D.Cal.1992). This is something Wees admitted doing in both chapter 7 and 13 cases. *See* n. 8, *supra*.

Second, the Court has reviewed that exemption list, and it was not current when used here. The Idaho exemption statutes were amended effective July 1, 1999. The Debtors' petition and schedules were prepared and filed later that month. This only heightens the issue presented concerning Wees' advice to these Debtors.

**11.** Wees admits that chapter 13 cases are different from chapter 7 cases, and that he does fewer of them. In fact, this is part of the explanation for the higher fee charged, and the problem with inaccurate disclosure of the fee in the statement of affairs. But it should be emphasized that the unauthorized practice of law occurred here not solely in the context of the chapter 13 plan. Wees' conduct in chapter 7 cases, if the same approach is taken to the forms, schedules, and exemptions, is still wrongful.

(i) $2,000; or

(ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and

(C) reasonable attorneys' fees and costs in moving for damages under this subsection.

An injunction to prohibit a petition preparer from continuing such conduct is also authorized in § 110(j), which provides:

(j)(1) A debtor for whom a bankruptcy petition preparer has prepared a document for filing, the trustee, a creditor, or the United States trustee in the district in which the bankruptcy petition preparer resides, has conducted business, or the United States trustee in any other district in which the debtor resides may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer.

(2)(A) In an action under paragraph (1), if the court finds that—

(i) a bankruptcy petition preparer has—

(I) engaged in conduct in violation of this section or of any provision of this title a violation of which subjects a person to criminal penalty;

(II) misrepresented the preparer's experience or education as a bankruptcy petition preparer; or

(III) engaged in any other fraudulent, unfair, or deceptive conduct; and

(ii) injunctive relief is appropriate to prevent the recurrence of such conduct, the court may enjoin the

bankruptcy petition preparer from engaging in such conduct.

(B) If the court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I), (II), or (III) of clause (i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, or has not paid a penalty imposed under this section, the court may enjoin the person from acting as a bankruptcy petition preparer.

Both § 110(i) and (j) appear applicable to Wees' conduct, given the Court's findings and conclusions. However, the UST did not seek relief under these provisions. Accordingly, the Court concludes that relief cannot properly be granted under these sections at this time.[12]

[11] The Court also concludes, however, that Wees' unauthorized practice, in conjunction with his misleading advertising, led the Debtors into a situation where they paid fees to him only to find that, in order to successfully prosecute their chapter 13 case, they had to hire counsel. They did not receive reasonable value for the fee they paid, and were damaged in at least that amount. This is sufficient basis to require the disgorgement of Wees' fee. § 110(h)(2); *Mitchell*, 97.1 I.B.C.R. at 6. *See also*, § 110(i)(1)(A).[13] Therefore, the Court will order that $165.00 shall be refunded by Wees to the Trustee, and the Debtors may assert any exemption they might have therein. § 110(h)(2).

## CONCLUSION AND ORDER

The Court finds and concludes that Wees has violated § 110(f)(1) by using the term "legal" in his advertising. Accord-

---

12. The ruling herein is, of course, without prejudice to any future action which may be pursued under § 110(i) and/or (j). The Court notes that Fed.R.Bankr.P. 7001(7) requires an adversary proceeding when seeking injunctive relief.

13. As indicated, the UST did not set forth a specific case for damages, sanctions, costs and fees under § 110(i). It did, however, identify as a requested remedy the refund of the fee charged as being, under all the circumstances, excessive. This is sufficient notice to Wees of the relief sought, and § 110(h)(2) supports disgorgement.

ingly the UST's motion is GRANTED in part, and the Court ORDERS Wees to pay, under and pursuant to § 110(f)(2), a sanction of $500.00. Such sanction shall be paid to the Clerk of the Court.

The Court further finds and concludes that the fee paid to Wees by the Debtors, under all the circumstances, is unreasonable and in excess of the value of services rendered, and the UST's motion is in this regard GRANTED. The Court ORDERS that Wees pay $165.00 to the chapter 13 Trustee. § 110(h)(2).

The Court finds and concludes that the erroneous response to question no. 9 on the statement of affairs does not constitute or reflect a violation of § 110, and the UST's motion is, in that regard, DENIED.

The Court finds and concludes that, in this case, Wees' conduct constitutes the unauthorized practice of law. However, inasmuch as the UST sought no relief under § 110(i) or § 110(j), the Court will not enter an injunction, nor refer the matter to the District Court.

United States Bankruptcy Court, M.D. Alabama.