IOWA SUPREME COURT COM-
MISSION ON UNAUTHORIZED
PRACTICE OF LAW, Appellee,

v.

LeRoy James STURGEON, Appellant.

No. 99–0417.

Supreme Court of Iowa.

Oct. 10, 2001.

As Revised on Denial of Rehearing
Nov. 28, 2001.

LeRoy J. Sturgeon, Sioux City, pro se.

Thomas J. Miller, Attorney General, and Grant K. Dugdale, Assistant Attorney General, for appellee.

LARSON, Justice.

LeRoy Sturgeon has appealed from a district court order enjoining him from the unauthorized practice of law arising out of his bankruptcy business. We modify and affirm.

Sturgeon meets with clients in his office and interviews them to obtain information to prepare chapter 7 bankruptcy documents. Signs posted in his office, as well as his advertising, state he is a "non-attorney bankruptcy specialist" and "no legal advice" is given, although he was an attorney prior to his disbarment in 1992.[1] According to his testimony,

> I conduct an initial interview to obtain information from them. I take that information and on some occasions have to seek out additional factual information and I input that data into a computer that contains bankruptcy software. And then that information fills in the blanks on the forms.
>
> I then print off those forms, have those debtors return to my office, read them, let me know whether or not they're accurate. If they're not, I then make corrections or changes as they direct so that they're finally determined to be accurate.
>
> And then they sign them so that they may be copied and filed with the Clerk of the United States Bankruptcy Court.

---

**1.** Sturgeon contends the district court erred in referring to a license revocation because there was no evidence in the record concerning it. The Unauthorized Practice Commission's complaint, however, asserted Sturgeon was disbarred, and in Sturgeon's answer, he admitted it. That matter is therefore established. It is relevant to help show Sturgeon drew on his legal experience in drafting a pleading, an issue addressed below.

On April 13, 1998, our Commission on the Unauthorized Practice of Law (commission) sought an injunction against Sturgeon, claiming his bankruptcy business violated our unauthorized practice rules. The district court granted the injunction, and Sturgeon appealed.

Sturgeon's appeal raises six issues, which we consolidate into four: (1) the court's interpretation of 11 U.S.C. § 110, concerning the scope of work permitted to be performed by a nonattorney; (2) the adequacy of the factual record to support the charge; (3) the constitutionality of our unauthorized practice rules; and (4) the scope of the court's injunction.

## I. *Interpretation of 11 U.S.C. § 110.*

 Sturgeon argues 11 U.S.C. § 110 prevents Iowa from

> totally ban[ning] all forms of non-attorney bankruptcy preparers.
>
> . . . .
>
> . . . Congress could not have intended that some states may allow non-attorney bankruptcy preparers to perform the limited services in the federal courts located in those states, while other states may preempt this Congressional act and ban any and all such services.

However, the statute provides that states may do exactly that:

> Nothing in this section shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law.

11 U.S.C. § 110(k) (1994). "As a result of this provision, a document preparer may not use § 110 as a 'safe harbor' if a rule or certain rules prohibit the unauthorized practice of law or the document preparer's activities are otherwise prohibited by law." *In re Gabrielson,* 217 B.R. 819, 826 (Bankr.D.Ariz.1998); *see also In re Far-*

*ness,* 244 B.R. 464, 470 (Bankr.D.Idaho 2000) (stating that the ability of nonlawyers to practice before bankruptcy courts in a given jurisdiction will be governed by the relevant state laws and rules prohibiting the unauthorized practice of law); *Florida Bar v. Catarcio,* 709 So.2d 96, 99 n. 1 (Fla.1998) ("[W]e disagree with his argument that 11 U.S.C. § 110 (1994), preempts this Court's authority to regulate the unlicensed practice of law in Florida in the bankruptcy context.").

We hold these unauthorized practice proceedings are not proscribed by 11 U.S.C. § 110 and therefore proceed to a determination of the merits of the charge.

## II. *Sufficiency of the Evidence.*

 This is an equity proceeding, so our review is de novo. Iowa R.App. P. 4. Sturgeon asserts the commission must prove the allegations of their complaint by a convincing preponderance of the evidence, citing *Committee on Professional Ethics & Conduct v. Baker,* 492 N.W.2d 695, 700 (Iowa 1992). *Baker,* however, was not an unauthorized practice case, so its standard of proof is not necessarily binding here. The commission, however, does not argue for a different standard of review, so for purposes of this appeal, we will assume the standard is a convincing preponderance of the evidence.

Iowa Court Rule 118A.1 authorizes injunctions against the unauthorized practice of law. The commission notes that this court has the inherent authority to define and regulate the practice of law, citing *Baker.* In *Baker* we approved the nonexclusive definition of the practice of law found in Ethical Consideration 3–5:

> It is neither necessary nor desirable to attempt the formulation of a single, specific definition of what constitutes the practice of law. However, the practice of law includes, but is not limited to,

representing another before the courts; giving of legal advice and counsel to others relating to their rights and obligations under the law; and preparation or approval of the use of legal instruments by which legal rights of others are either obtained, secured or transferred even if such matters never become the subject of a court proceeding. Functionally, the practice of law relates to the rendition of services for others that call for the professional judgment of a lawyer. The essence of professional judgment of the lawyer is the educated ability to relate the general body and philosophy of law to a specific legal problem of a client; and thus, the public interest will be better served if only lawyers are permitted to act in matters involving professional judgment. Where this professional judgment is not involved, nonlawyers, such as court clerks, police officers, abstracters, and many governmental employees, may engage in occupations that require a special knowledge of law in certain areas. But the services of a lawyer are essential in the public interest whenever the exercise of professional judgment is required.

Iowa Code of Prof'l Responsibility EC 3–5; *see also Baker*, 492 N.W.2d at 701 (approving a similar version of this definition).

█ Sturgeon claims that he merely typed information, furnished by his clients, into preprinted forms. The commission, however, has a different view: Sturgeon solicited information to complete the forms, chose the forms to be used, rendered advice to his clients as to the information that would be required, and inserted the information obtained into appropriate blanks in the forms. In at least one case, Sturgeon actually drafted a pleading to be filed in the bankruptcy case.

Cases have drawn the unauthorized practice line at the point at which data entry (either by typewriter or computer) crosses the line between copying written information provided by the client and oral solicitation of the information necessary to fill out documents selected by the preparer. *See, e.g., Hastings v. United States Trustee (In re Agyekum)*, 225 B.R. 695, 702 (B.A.P. 9th Cir.1998) ("Soliciting information from a debtor which is then typed into [bankruptcy] schedules constitutes the unauthorized practice of law."); *Farness*, 244 B.R. at 472 (use of preprinted bankruptcy forms or bankruptcy software that automatically places solicited information in appropriate schedule does not save preparer from engaging in the unauthorized practice of law); *In re Kaitangian*, 218 B.R. 102, 110 (Bankr.S.D.Calif.1998) ("Plugging in solicited information from questionnaires and personal interviews to a pre-packaged bankruptcy software program constitutes the unauthorized practice of law."); *In re Bachmann*, 113 B.R. 769, 774 (Bankr.S.D.Fla.1990) ("[Preparer] engaged in the unauthorized practice of law when he solicited information from [his clients] which he reformulated and typed into their bankruptcy petition ... [but] '[t]yping services' ... may type bankruptcy forms for their clients, provided they only copy the written information furnished by [their] clients."); *Catarcio*, 709 So.2d at 98, 100 (finding preparer to be engaged in unauthorized practice of law by "taking information from [client] orally to complete the bankruptcy petition and amendment" and enjoining preparer from "making inquiries and answering questions as to the particular bankruptcy forms that might be necessary, how best to fill out the forms, the information necessary to complete the forms, and where to properly file such forms"); *see also Gabrielson*, 217 B.R. at 827 ("It is possible that in other cases, in other situations, where a particu-

lar document preparer . . . only takes the official forms and types them based upon handwritten or printed information from the debtor, the assistance would not be the unauthorized practice of law.").

Sturgeon conducted an initial interview to solicit information, which he then typed into the computer. He also advised clients to bring certain information with them to the interview. He stated, "I believe at least I can provide a service to minimize the occasion of pro se debtors in bankruptcy who fill [documents] out incorrectly or who perhaps don't know that they also have to file a statement of financial affairs or will only file this set of documents and not that one." Clearly, Sturgeon counseled clients on which documents they needed to file, and this has been held to be the practice of law. *See Bachmann,* 113 B.R. at 773 ("[S]ecretarial services may not make inquiries nor answer questions from their clients as to . . . the particular forms which might be necessary . . . ." (citing *Florida Bar v. Brumbaugh,* 355 So.2d 1186, 1194 (Fla.1978))).

Sturgeon's own testimony established that he did more than merely fill in blanks in computer-generated forms. It is clear he drew on his knowledge and experience in bankruptcy matters. He testified:

Quite some time ago I learned that people were able to purchase what I call store bought forms and in their own feeble attempts to fill them out, do that themselves and file them in bankruptcy. . . .

In any event, when I learned that people could do these on their own and screw them up, I then began looking into that and found Title II Section 110 . . . authorizes non-attorney preparation of bankruptcies.

I made a decision that—because I would at least from having some years of experience at it—know better how to

fill out forms than some people, that I could perform a service.

. . . .

. . . When I fill those forms out, for example, I believe at least I can provide a service to minimize the occasion of pro se debtors in bankruptcy who fill them out incorrectly or who perhaps don't know that they also have to file a statement of financial affairs or will only file this set of documents and not that one.

. . . .

I just believe that people are better served by an affordable bankruptcy preparer who has—at least has experience of knowing where the clerk's office is at and what [the bankruptcy clerk] requires in terms of what forms and in what order.

He further testified:

There are other sources and resources where laypeople can obtain information and forms. My function is merely providing that same thing without exercising legal judgment, *but in a skilled and experienced way.* Clerically, I am doing this.

(Emphasis added.)

In *Baker* the respondent lawyer had cooperated with a nonlawyer in the marketing of living-trust materials, and he was accused of aiding in the unauthorized practice of law. 492 N.W.2d at 702. The issue was whether his nonlawyer associate was "practicing law" within the meaning of EC 3–5. Under facts very similar to the present case, we held the nonlawyer was practicing law:

From the evidence in this case it is clear that [the nonlawyer's] actions met one of the practicing law tests articulated in EC 3–5: "approval of the use of legal instruments by which legal rights of others are either obtained, secured or transferred." [The nonlawyer] met with

the clients. He advised them about what they needed in the way of estate planning. He advised them in particular about what documents they would need and how those documents would need to be tailored to meet their particular situation. In the words of one [unauthorized practice commission] investigator, by the time the clients got to Baker "it was a done deal." Baker was merely a scrivener. [The nonlawyer] had already made the major decisions; he, rather than Baker, was exercising professional judgment. The "smoking gun" on this point is found in the supplemental financial planning letter. This document acknowledges that the financial planning letter and related instruments were recommended by [the nonlawyer].

*Id.*

In at least one case, Sturgeon actually prepared a pleading in response to an objection filed to his client's discharge in bankruptcy. This answer proceeded to admit or deny, in order, each paragraph of the complaint. The answer then included the following legal reasoning: The statute relied upon by the complainant did not apply as alleged, "since [the client] neither waived discharge in the previous case, nor was I denied discharge under [the statute]. In fact, as may be seen by the attached Exhibit 'A,' . . . I was granted a discharge in that previous case." The answer concluded:

The current complaint is based however, upon § 523(a)(10), which expressly excludes from discharge debts from a previous case " . . . in which the debtor waived discharge, or was **denied a discharge** under section 727(a) . . ." If Congress had intended the same result as to debts from a previous case in which discharge was granted and later revoked, Congress would have said so. By the plain language of the statutes,

§ 523(a) does not preclude discharge of any of the debts listed in my current schedules.

This answer clearly shows Sturgeon drew on his experience as a lawyer in drafting it.

For some reason, the commission did not call the client for whom the answer was drafted, or any other clients, to develop the record further as to the extent of Sturgeon's involvement in their cases. Nevertheless, the record supports a conclusion that Sturgeon's assistance in the preparation of bankruptcy documents went far beyond the role of a scrivener and constituted the unauthorized practice of law. This included his participation in the selection, preparation, and filing of the bankruptcy forms, and the advice rendered to his clients.

### III. *The Vagueness Challenge.*

■ Sturgeon raises a vagueness challenge to our unauthorized practice rules, claiming he is unable to discern the limits on his involvement in bankruptcy matters. It is true that, by its nature, the "practice of law" has not been precisely defined. We have said

the practice of law includes the obvious: representing another before the court. But the practice of law includes out-of-court services as well. For example, one who gives legal advice about a person's rights and obligations under the law is practicing law. Or one who prepares legal instruments affecting the rights of others is practicing law. Or one who *approves* the use of legal instruments affecting the rights of others is practicing law.

*Baker,* 492 N.W.2d at 701.

Sturgeon argues that terms such as "before the court," "legal instruments," "prepares," and "approves" are so broad he is "unable to discern what valid limits on his activities must be honored." The broad

definition of the practice of law in EC 3–5 and cases such as *Baker* would mean that only a lawyer could be a bail bondsman or transact the sale of a motor vehicle, according to him.

■ To pass a vagueness test a statute must be " 'set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest.' " *Arnett v. Kennedy*, 416 U.S. 134, 159, 94 S.Ct. 1633, 1647, 40 L.Ed.2d 15, 36 (1974) (quoting *United States Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 578–79, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796, 816 (1973)).

The Florida Court of Appeals applied this test in an unauthorized practice case and concluded:

[T]he definition of the practice of law in Florida is not confined to the language in [the unauthorized-practice-of-law statute], but, rather, is shaped by the decisional law and court rules as well as common understanding and practices. In deciding whether the [defendants] . . . received fair and adequate warning of what activities constitute the practice of law and, thus, are proscribed to unlicensed and unauthorized individuals, we find the decisional law instructive and enlightening . . . .

. . . .

The quoted comment [from *Brumbaugh*, stating "it is somewhat difficult to define was constitutes the practice of law in all instances"] was not intended, and should not be construed, to suggest that the practice of law cannot be defined or that an attempt to interpret [the unauthorized-practice-of-law statute] must involve guesswork and chance. Instead, the court acknowledged the reasonable notion that an inflexible, permanent definition is simply impracticable. Were we to adopt the [defendants'] suggestion that the need for flexibility in definition renders a statute void for vagueness, the State would be effectively precluded from establishing minimum qualifications for practice in the regulated and licensed professions and occupations. The law is clearly established that the states have a compelling interest in the regulation of the practice of the professions and, particularly, in the setting of minimum standards for entry into the practice of law. Having considered the provisions of [the unauthorized-practice-of-law statute], in conjunction with the pertinent case law and rules interpreting it, we conclude the law regulating the practice of law is "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." *Arnett*, 416 U.S. at 158, 94 S.Ct. at 1646.

*State v. Foster*, 674 So.2d 747, 750–52 (Fla. Dist.Ct.App.1996) (other citations omitted).

■ While the practice of law necessarily defies a precise definition, we do not believe Sturgeon was forced to guess whether he was crossing the line. The record establishes he performed services that any reasonable person in his position would understand to be the practice of law. Furthermore, we have said our rule on the unauthorized practice of law resolves problems of fair notice by authorizing the commission to seek injunctions. The subject of such an injunction would then be on notice of what specific conduct is prohibited before that person is punished. *Baker*, 492 N.W.2d at 704. If the subject of an injunction believes such an injunction was issued in error, he can always seek appellate review of such an injunction, which is precisely what happened here. Accordingly, we reject Sturgeon's vagueness challenge.

### IV. Scope of the Injunction.

The district court order stated the respondent

is hereby permanently enjoined from engaging in those activities which constitute the practice of law including but not limited to—

a. Preparation of bankruptcy documents including bankruptcy petitions, schedules, statements of financial affairs, and other required information;

b. Preparing documents for others in connection with judicial proceedings;

c. Preparing or approving the use of legal instruments by which legal rights of others are either obtained, secured, or transferred;

d. Giving legal advice to others relating to their legal rights and obligations under the law; or

e. Otherwise providing advice or services which constitute the practice of law.

Sturgeon contends this prohibition is too broad, stating:

Trial Court did not fashion its remedy by narrowly drawing injunctive limitations designed to meet a legitimate state interest. Sturgeon is restrained by Trial Court's decree from accepting employment as a real estate salesperson. Sturgeon could not, under this decree, accept a position as a typist or word processor for an employer such as a law firm. Trial Court's decree would prevent Sturgeon from becoming a used car salesperson or an employee of H & R Block during tax season. Sturgeon

would have to toss his notary seal into the trash under this broad decree.

Sturgeon's reading of these prohibitions is too broad. Nothing in the district court's opinion, in our own court rules, or in our cases would prevent his employment as a salesperson, typist, word processor, notary, or tax preparer.

We believe *Baker* and the other cases discussed make it clear that filling in blanks as a typist or word processor does not cross the line and does not constitute the practice of law. That line is crossed, however, when a preparer furnishes advice as to what forms should be used and what information should be inserted in the forms. It certainly is crossed when he drafts a legal document such as an answer to a complaint, as Sturgeon did.

We affirm the district court's order with this modification: Paragraph one should read, "Except as expressly allowed by this opinion with respect to bankruptcy matters or by the rules of this court, including court rule 118A.3 (limited real estate practice), the respondent LeRoy James Sturgeon is hereby permanently enjoined from . . . ."

In all other respects the injunction order is affirmed.

**AFFIRMED AS MODIFIED.**

SNELL, S.J.,* participates in lieu of STREIT, J., who takes no part.

---

* Senior Judge assigned by order pursuant to

Iowa Code section 602.9206 (2001).